UNITED STATES of America

v.

AGNES, Louis, aka "Louis Martin", aka "Louis Martines".

Appeal of Louis AGNES.

Louis Agnes, Appellant.

No. 84–1041.

United States Court of Appeals, Third Circuit.

Argued Oct. 18, 1984.

Decided Jan. 24, 1985.

As Amended March 5, 1985.

Rehearing and Rehearing En Banc Denied March 7, 1985.

Thomas Colas Carroll (argued), Carroll & Carroll, Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., E.D. Pa., Joseph D. Mancano, Sp. Atty., Philadelphia Strike Force, Philadelphia, Pa., William C. Bryson (argued), U.S. Dept. of Justice, Washington, D.C., for appellee.

Before GIBBONS, BECKER and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

Defendant, Louis Agnes, was indicted on charges both of violating and of conspiring to violate the Hobbs Act, 18 U.S.C. § 1951 (1982). Following a jury trial in the United States District Court for the Eastern District of Pennsylvania, defendant was convicted of the substantive offense but was acquitted of the conspiracy charge. His three co-defendants, Mitchell Inselberg, Michael Morrone, and Jennifer Santilli, were each acquitted on both counts. After denying defendant's post-trial motions, the district court sentenced defendant to twenty years' imprisonment and imposed a $10,-000. fine.

Agnes filed a timely notice of appeal on January 20, 1984. This court has jurisdiction pursuant to 28 U.S.C. § 1291 (1982). We will affirm for the reasons stated in this opinion.

### I. *Factual History*

We adopt the district court's summary of the evidence presented at trial as stated in its memorandum opinion of February 27, 1984, denying defendant's post-trial motions. *See United States v. Agnes*, 581 F.Supp. 462, 464–67 (E.D.Pa.1984).

In the fall of 1980, defendant, Louis Agnes, met two stained-glass artisans, Joseph Lam and Cheryl Hahn, who were working at a stained-glass workshop in New Hope, Pennsylvania. Agnes complimented the two on their work and offered to provide them with financial backing if they ever decided to open their own business. In April of 1981, Lam and Hahn made such a decision and contacted Agnes about his earlier offer. Following some negotiations, Agnes loaned Lam and Hahn $5,000. in cash at no interest. Agnes asked Lam to sign an I.O.U. immediately, stating that he would have more formal loan documents prepared for their signatures at a later date.

Lam and Hahn opened the new business, Crescent Stained Glass Company, in mid-April 1981. Approximately one month later, Agnes met with the two and presented

them with documents to be signed. Instead of evidencing a loan agreement between Agnes and the two, the documents were written in the form of limited partnership agreements. Moreover, Agnes' name did not appear on the documents; rather the agreement listed the names of Michael Morrone and Jennifer Santilli as partners with Lam and Hahn. Agnes explained that he wanted to use the others' names to represent his interest so that his wife would not learn of this asset during their pending divorce proceeding.

Lam and Hahn were upset with the unexpected nature of the documents and were reluctant to sign them. After Agnes became angry and threatening, however, the two did sign the documents that day. The documents characterized Agnes' $5,000. advance as a capital investment by Morrone and Santilli, which was to be repaid without interest over a period of twenty-one months beginning in July 1981.

Although no monthly payments were due to be made by Lam and Hahn for several months, Agnes began asking for money from the business almost immediately. In May 1981, at Agnes' insistence, Lam leased a Mercedes Benz automobile for Agnes. In June and July 1981, Lam gave Agnes two cash payments of $1,000. each in response to Agnes' constant demands for more money.

In mid-July 1981, when business at Crescent began to slow considerably, Agnes accused Lam of stealing money from the business and converting partnership property. Lam denied these charges and told Agnes that there was no more money to pay him. Agnes responded on several occasions by threatening to physically harm Lam if Lam did not make more payments.

On September 13, 1981, Agnes entered the shop with Michael Morrone, Jennifer Santilli, Mitchell Inselberg, and three other men. Although the shop was closed, Lam and Hahn were present along with three employees, Thomas Bryant, Leigh DiMezza and Michael Rogers. Agnes announced he was closing the business and taking everything in the shop. Agnes threatened Lam

and then struck him in the face. He told Lam that no one had better interfere with his efforts to remove all the property from the shop. As a result of Agnes' actions and threats, Lam, Hahn, and the three employees were placed in fear.

Agnes then supervised the removal of items from the shop, deciding which items would be taken and which would be left behind. Agnes also told Morrone to guard Lam so that Lam could not leave or take items out of the shop. Agnes continued to make threats against Lam throughout the evening. Agnes told Lam, among other things, that he was going to break Lam's legs, that he would break Lam's hand so that Lam would never be able to make stained glass again, that he should put a bullet through Lam's head, and that Lam did not deserve to see his next birthday.

One employee, Thomas Bryant, attempted to hide from Agnes certain items held by the business on consignment. Agnes confronted Bryant, threatened him, and struck him in the jaw, causing him to fall and injure his head. The New Hope police, who had been alerted that some unusual events were taking place, came twice to the shop to investigate. But Lam, while being threatened by Agnes, sent the police away both times, telling them that there was no problem.

Agnes took almost all the property in the shop, including business records, inventory, and personal items. Prior to leaving, Agnes forced Lam to sign a document stating that he had sold all of the shop's contents to Agnes for one dollar. Agnes then threatened to break Lam's legs if Lam touched the business checkbook. He told Lam he would return the next day to put a bullet through the shop's supply of raw glass, which did not fit in the Mercedes Benz and pickup truck in which the group arrived. When Lam then tried to get some of the items back from Agnes, Agnes told Lam that he should have put a bullet in Lam's head when he had the chance.

In March 1982, Philadelphia police and FBI agents searched Agnes' apartment pursuant to a search warrant and discover-

ed some of Crescent's business records as well as some stained-glass items. On October 18, 1982, Agnes was indicted along with Inselberg, Morrone, and Santilli. Agnes now appeals his judgment of conviction for violating the Hobbs Act, alleging several different errors by the district court.

## II. *Claim-of-Right Defense*

### A. *General Claim-of-Right Defense*

■ Defendant first alleges that the district court erred, as a matter of law, in refusing to permit the admission of any evidence demonstrating his belief that he had a lawful claim of right to the property he took from the Crescent Stained Glass shop on September 13, 1981. Defendant wished to introduce evidence supporting his contention that he was a part owner of Crescent and, as such, had a lawful right to dissolve the business and take property from it because his partner, Joseph Lam, had been embezzling money from the business. The district court did not allow the admission of such evidence, stating that any belief by defendant that he had a lawful claim of right to the property allegedly extorted is no defense to the charge of violating the Hobbs Act or conspiring to violate the Hobbs Act (*see* Tr. 401, 417).

Defendant was convicted of violating the extortion branch of the Hobbs Act as defined in 18 U.S.C. § 1951(b)(2). That section defines extortion as:

> "... the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

18 U.S.C. § 1951(b)(2) (1982).

Defendant argues that, in this case, his taking of property from the shop did not constitute extortion because it was not accomplished by the "wrongful" use of force, violence, or fear. He contends that the

word "wrongful" serves to exclude from the purview of the statute the use of force in obtaining property to which one has a lawful claim of right. Defendant, therefore, maintains that the district court erred in refusing to permit him to assert a claim-of-right defense and in failing to properly instruct the jury on the meaning of the word "wrongful" in the statute.

Defendant preserved these claims for appeal by raising them at trial and in post-trial motions. By memorandum opinion dated February 27, 1984, the district court rejected defendant's argument that there is a general claim-of-right defense to Hobbs Act extortion. *United States v. Agnes*, 581 F.Supp. 462, 470–71 (E.D.Pa.1984). We agree with the conclusion of the district court.

The Hobbs Act was enacted by the Congress in 1946. Pub.L. No. 79–486, 60 Stat. 420 (1946). The statutory language defining extortion that was originally included in the Act remains in effect today. The language was copied substantially from the then-existing New York Criminal Code. The legislative history leaves no doubt that the definition of extortion under the Hobbs Act was to be the same as that under the New York Code as construed by the New York courts in 1946, when the Act became effective.[1]

Whether the Hobbs Act allows for a claim-of-right defense, therefore, depends initially on the existence of the defense under New York law in 1946. In 1942, the Second Circuit stated that New York courts would no longer recognize a claim-of-right defense under New York's extortion statute. *See United States v. Pignatelli*, 125 F.2d 643, 647 (2d Cir.), *cert. denied*, 316 U.S. 680, 62 S.Ct. 1269, 86 L.Ed. 1754 (1942). The Appellate Division of the New York Supreme Court confirmed that belief in 1952 by expressly approving *Pig-*

---

**1.** Representative Hobbs, the sponsor of the bill, stated in floor debates that:

> "... there is nothing clearer than the definitions of robbery and extortion in this bill. They have been construed by the courts not once, but a thousand times. The definitions

in this bill are copied from the New York Code substantially."

91 Cong.Rec. 11,900 (1945) (remarks of Rep. Hobbs); *see id.* at 11,906 (remarks of Rep. Robsion); *id.* at 11,842 (remarks of Rep. Walter); *id.* at 11,843 (remarks of Rep. Michener).

natelli in *People v. Fichtner*, 281 A.D. 159, 165, 118 N.Y.S.2d 392, 398 (1952), *aff'd*, 305 N.Y. 864, 114 N.E.2d 212 (1953). Thus, until 1973, when the Supreme Court of the United States rendered its decision in *United States v. Enmons*, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973), there was little arguable authority for the proposition that a person could raise as a defense to the charge of Hobbs Act extortion that he had a lawful claim of right to the property allegedly obtained.

The *Enmons* decision serves as the primary basis for defendant's position that there is a claim-of-right defense to the charge of Hobbs Act extortion. In *Enmons*, the Supreme Court, by a five to four vote, held that the Hobbs Act does not prohibit employees' use of violence to obtain legitimate union objectives, such as higher wages in return for services desired by the employer.[2] The Government had contended in *Enmons* that the unambiguous language of the Hobbs Act clearly reaches *all* instances in which force is used to obtain property—even during the course of labor disputes. Justice Stewart, writing for the majority, rejected this interpretation of the Hobbs Act; he countered that this construction would make the word "wrongful" in the Act superfluous. 410 U.S. at 399–400, 93 S.Ct. at 1009–1010. The addition of the word "wrongful," in Justice Stewart's view, rendered the express language of the statute ambiguous, which required the Court to examine the legislative history of the Act to determine whether Congress intended it to cover cases of strike violence. *Id.* at 400–01, 93 S.Ct. at 1009–10.[3] The Court held that the legislative history was clear: Congress expressly declared its intent to exclude labor violence from coverage of the Hobbs Act. *Id.* at 401–08, 93 S.Ct. at 1010–14.

We construed the *Enmons* decision in *United States v. Cerilli*, 603 F.2d 415 (3d Cir.1979), *cert. denied*, 444 U.S. 1043, 100 S.Ct. 728, 62 L.Ed.2d 728 (1980). In that case, defendants had been convicted of extortion under the Hobbs Act for coercively soliciting political contributions. Relying on Justice Stewart's statutory interpretation in *Enmons*, the defendants contended that their conduct did not violate the Hobbs Act because the solicitation of political contributions was not inherently "wrongful." Judge Higginbotham, writing for the majority in *Cerilli*, agreed that such solicitations generally were not "wrongful" but concluded that the coercive solicitations conducted by the defendants were "wrongful" because the defendants had no "lawful claim" to the contributions solicited. *Id.* at 419. The defendant in this case thus cites *Cerilli* to support his proposition that the Hobbs Act proscribes only that use of force to obtain property which is not justified by the taker's lawful claim to the property. We conclude, however, that defendant's position is not a correct reading of *Enmons* as interpreted by *Cerilli*.

Justice Stewart's definition of the word "wrongful" in the Hobbs Act was not based primarily on the defendant's lawful claim to higher wages in that case. Rather, it was based on clearly expressed legislative intent that violence committed by striking workers in furtherance of their strike not be included within the proscription of the Hobbs Act. As Judge Higginbotham stated in *Cerilli*:

"Thus we understand *Enmons* as not relying primarily on the legitimacy of the

---

**2.** Five specific acts of violence were alleged to have been committed by workers striking against Gulf States Utilities Company. They were: firing high-powered rifles at three Company transformers, draining the oil from a Company transformer, and blowing up a transformer substation. *See Enmons*, 410 U.S. at 398, 93 S.Ct. at 1008.

**3.** We recognize that Justice Stewart made the sweeping assertion, relied on by defendant here, that " 'wrongful' has meaning in the Act only if

it limits the statute's coverage to those instances where the obtaining of property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property." 410 U.S. at 400, 93 S.Ct. at 1009–10. We believe, however, that this statement cannot be read in a vacuum, but must be placed in context with Justice Stewart's endeavor to show that violence during a lawful strike was not within the ambit of the Act.

union's objectives but rather on the clear Congressional intent, as expressed both in the legislative history of the Hobbs Act and the entire federal scheme regulating labor-management relations, that violence during labor strikes not be punishable as extortion under the Hobbs Act. There is no corresponding intent to exempt the type of activity here from the ambit of the Act."

603 F.2d at 420 (footnote omitted).

We interpret *Enmons* to create a claim-of-right defense only in those situations in which the use of force is expressly identified by Congress as being outside the purview of the Hobbs Act.[4] Defendant's alleged behavior in this case was not so excluded by Congress.

Our interpretation of the *Enmons* decision is supported by other Courts of Appeals that have considered the issue. *See United States v. Zappola*, 677 F.2d 264, 268–70 (2d Cir.), *cert. denied*, 459 U.S. 866, 103 S.Ct. 145, 74 L.Ed.2d 122 (1982); *United States v. Porcaro*, 648 F.2d 753, 760 (1st Cir.1981); *United States v. French*, 628 F.2d 1069, 1075 (8th Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980); *United States v. Warledo*, 557 F.2d 721, 728–30 (10th Cir.1977). Our decision is also consistent with a recent congressional statement on the issue.[5]

Defendant relies on other sources of authority for its position that a claim-of-right defense to extortion prosecutions should be recognized. He points to section 223.1(3) of the Model Penal Code and its accompanying commentary, which propose the adoption of such a defense for theft offenses. *See* Model Penal Code (U.L.A.) § 223.1(3)(b) (1974). He also cites to a Report by the National Commission on Reform of Federal Criminal Code, Pattern Jury Instructions for the Fifth and Seventh Circuits, as well as sections 100–106 of the Restatement 2d of Torts. *See* Appellant's Brief pp. 18–21. None of these sources of authority are binding in this jurisdiction, and we do not find them persuasive in this case.

Accordingly, we hold that the district court did not err in refusing to admit evidence supporting defendant's claim-of-right theory of defense. Moreover, we hold that the district court did not err in failing to deliver to the jury the definition of the word "wrongful" that defendant proposes.

B. *Specific Claim-of-Right Defense Conferred by Pennsylvania Law*

Defendant alleges another error by the trial court relevant to the theory that his lawful claim to the property taken from the Crescent shop justified his actions in taking it. Defendant argues that, even if this court refuses to recognize a general claim-of-right defense to Hobbs Act extortion, Pennsylvania law confers on him, as a partner in a business, a specific right to dissolve a partnership and a conditional right to retain partnership property if another partner is guilty of fraud. *See* 59 Pa.Cons.Stat. § 361 (1984). He alleges as

---

4. We do not preclude the possibility that Congress may have expressly specified other circumstances in which one's use of force to obtain property is not prohibited by the Hobbs Act. We only decide that Congress did not specify the type of acts allegedly committed by defendant in this case to be excluded from the proscription of the Hobbs Act.

We also note Judge Higginbotham's cogent warning in *Cerilli:*

"Any application of *Enmons* to cases outside of [the labor] context must be done with caution. Otherwise there is a danger that *Enmons,* if read as the appellants read it, could effectively repeal the Hobbs Act."

603 F.2d at 419.

5. In explaining the extortion provision of a bill to revise the federal criminal laws, the United States Senate Committee on the Judiciary implied that the existing exception to the Hobbs Act created by the *Enmons* decision does not extend outside the context of a labor dispute:

"The Committee has concluded that for the purposes of this bill the *Enmons* decision should not be modified. On the other hand, the Committee believes that the thrust of an extortion statute should be to punish violent extortionate means to obtain the property of another regardless of the legality of the ends sought and *has carried forward current law to that effect in situations not involving a labor dispute.*"

S.Rep. No. 307, 97th Cong., 1st Sess. 677 (1981) (emphasis added).

error the district court's instruction to the jury stating that property which is obtained in violation of the Hobbs Act can be either tangible or intangible.[6] Defendant asserts that the district court, by that instruction, failed to present to the jury the possibility that he may have been acting lawfully to dissolve a business in which he was a partner.

The district court was correct in its refusal to grant defendant's requested instruction that he be found not guilty if his purpose in going to the Crescent shop on the day in question was solely to dissolve the business.[7] As the district court correctly observed, the defendant's motive in proceeding to the Crescent shop to remove property of the business is irrelevant to a Hobbs Act violation (*see* A–885). Even if defendant legitimately believed he had a legal right as a partner to dissolve the alleged partnership that existed among him, Lam, and Hahn and to remove business property from the Crescent shop, such belief would not constitute a defense to the charge of violating the Hobbs Act. Accordingly, we hold that the district court

did not err in instructing the jury that defendant could be found guilty under the Hobbs Act for obtaining intangible property.

### III. *The Mens Rea Element of a Hobbs Act Offense*

Defendant next alleges that the district court erred in refusing to instruct the jury that they must find him to have intended to commit extortion in order to be found guilty.[8] In essence, defendant contends that extortion under the Hobbs Act is a specific-intent crime.[9] The district court rejected defendant's requested jury instruction, agreeing with the Government that extortion under the Hobbs Act was a general-intent crime (A–875).

▆ We need not determine the requisite intent for extortion under the Hobbs Act in order to reject defendant's claim. Defendant has failed to properly preserve this basis for appeal. A party that does not specifically object to an alleged defect or omission in the charge to the jury does not preserve that basis for appeal unless the district court's actions constituted plain

---

6. In instructing the jury on the elements of a *Hobbs Act violation, the district court defined* the term "property" in the context of the Act:
   "With regard to the first element, the term 'property' includes not only money and other intangible things of value, but also includes any intangible right considered as a source or element of income or wealth."
   A–165.

7. It was actually the counsel to defendant's co-defendant, Mitchell Inselberg, who submitted to the district court a requested instruction that:
   "If you find that defendant's [sic] were present on the premises of Crescent Stained Glass, New Hope, Pa., on the evening of September 13, 1981, with the intention and for the purposes of dissolving the partnerships and the business entities created by those partnerships and for no other purpose, then you must find defendant's [sic] not guilty."
   Appellant's Supplemental Appendix, at SA–2 (citations omitted). Defendant's counsel joined in this and other requested points for charge submitted by his co-counsel (A–888).

8. Defendant's co-defendant, Mitchell Inselberg, requested that the district court render the following instruction:
   "5. In order for you to convict the defendant's [sic] you must find beyond a reasonable doubt that they intended to commit extortion

as I have defined that term for you. If you do not find beyond a reasonable doubt that these defendant's [sic] or any one of them, intended to commit extortion, you must find them or that defendant not guilty."
Appellant's Supplemental Appendix, p. SA–2. Defendant's counsel joined in these requested instructions (A–888).

9. In support of his contention that Hobbs Act *extortion is a specific-intent crime, defendant* calls this court's attention, *inter alia,* to the United States Government's brief in *United States v. Dabish,* No. 82–1367, a pending criminal case in the Court of Appeals for the Sixth Circuit. In that brief, the Government states "[t]he Hobbs Act requires proof that the defendant acted with the specific intent to deprive his victim of property.... Where, as here, the indictment charges a specific intent crime, intent is always 'in issue' ...." Appellant's Supplemental Appendix at SA–30. The Government took this position in an effort to persuade the Court of Appeals that the district court had correctly admitted certain evidence at trial because it was relevant to prove the intent of the defendant, Dabish, when he committed the acts charged in the indictment.

error or affected substantial rights. *United States v. Olgin*, 745 F.2d 263 at 270–271 (3d Cir.1984); *United States v. Logan*, 717 F.2d 84, 91 (3d Cir.1983); *United States v. Palmeri*, 630 F.2d 192, 201 (3d Cir.1980), *cert. denied*, 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981); see Fed.R.Crim.P. 30 and 52(b).[10]

Federal Rule of Criminal Procedure 30 requires a party to make an objection to the charge before the jury retires in order to preserve that objection on appeal. In this case, defendant did not object to the district court's instructions on intent either immediately prior to or following the delivery of the charge to the jury. *See* A–139 to A–151; A–182 to A–190.[11] Moreover, given the vague, almost meaningless, instruction on intent proposed by defendants,[12] we cannot conclude that the district court committed plain error by substituting its own intent instructions for those of the defendant.[13]

## IV. *Employees as "Victims" under the Hobbs Act*

Defendant next alleges as error the district court's instructions to the jury that any of the five persons present at the Crescent shop on September 13, 1981, may be deemed the victims of extortion if they had some interest in the business.[14] Defendant

---

**10.** Rule 30 provides in part:
"No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."
Fed.R.Crim.P. 30.
Rule 52(b) states:
"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
Fed.R.Crim.P. 52(b).

**11.** Federal Rule of Criminal Procedure 30 states that, to preserve the claim on appeal, counsel must object to any portion of a charge or omission "before the jury retires to consider its verdict." Fed.R.Crim.P. 30. Although, at the charge conference, defense counsel did express his disagreement with the district court's instructions on *mens rea* (*see* A–880 to A–888), he did not include this issue in any of his objections made immediately before or after the court's delivery of the charge to the jury. *See* A–139 to A–151; A–182 to A–190. Absent express permission by the district court for counsel to incorporate by reference objections made during the charge conference, the failure to explicitly state an objection to the charge following its delivery but prior to the jury's retiring results in a waiver of that claim on appeal under Rule 30. *See United States v. Henderson*, 645 F.2d 569, 577–78 (7th Cir.), *cert. denied*, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981); *see also Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718, 721–22 (9th Cir.1976) (interpreting Fed.R.Civ.P. 51, which is equivalent to Fed.R.Crim.P. 30); *Piechoski v. Grace Lines, Inc.*, 409 F.2d 66, 70 (3d Cir.1969) (Fed.R.Civ.P. 51 requires counsel to state explicitly any exceptions following delivery of the charge).
Because defendant Agnes did not raise an objection to the district court's instructions on intent at the proper time, this court will not entertain the argument on appeal. *See United States v. Gibbs*, 739 F.2d 838, 850 (3d Cir.1984).
We note that the record in this case is not similar to the situation discussed in part III of our recent decision in *Bowley v. Stotler & Co., etc.*, 751 F.2d 641 (3d Cir.1985), where the court had stated to counsel at the time of ruling on the requested instructions before the jury charge:
"To the extent to which your requests are denied, the record, by my ruling now, will reflect the fact that you have objected and you are preserving and [sic] exception. Actually, you have an automatic exception to every adverse ruling, right?"

**12.** *See supra* note 8.

**13.** In explaining the type of "plain error" that is contemplated by Fed.R.Crim.P. 52(b), the Supreme Court of the United States has stated:
"By its terms, recourse may be had to the Rule only on appeal from a trial infected with error so 'plain' that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it."
*United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). We do not find such plain error to exist in this case.

**14.** The relevant portion of the district court's charge states:
"The victim or person threatened need not be the owner of the business which might be interrupted. It is sufficient that the victim have some interest in the business.
"It is the Government's position that Joseph Lam and Cheryl Hahn were partners in Crescent Stained Glass and that Leigh DiMezza, Michael Rogers and Thomas Bryant were employees and thus, all of these persons were victims."
A–165.

asserts that, given his lawful claim as a partner to the partnership property, the court's instructions could lead a jury to believe that a partner can be convicted of Hobbs Act extortion for forcibly obtaining partnership property from one of his own employees.

■■■ We find no error in the instructions by the district court. As we have already concluded, defendant's claim of right to the property obtained, whether by virtue of his ownership of or partnership in the Crescent Stained Glass business, is irrelevant to the offense of extortion under the Hobbs Act. A person can be guilty of extortion for obtaining his own property from another by the wrongful use of actual or threatened force, violence, or fear. *See supra* part II of this opinion. The district court properly instructed the jury, however, that the person from whom property is obtained must have some interest in the property in order to be considered a victim of extortion. *See United States v. Biondo*, 483 F.2d 635, 640 (8th Cir.1973), *cert. denied,* 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974) (person who had a definite financial interest in a business could be a "victim" under the Hobbs Act). Because having a financial interest in a business is sufficient for one to be a victim of Hobbs Act extortion,[15] the trial court did not err in suggesting that any of the employees of Crescent (who obviously had a financial interest in the continuing operation of the business) could be deemed victims of defendant's alleged extortion.

### V. *Alleged Variation Between Indictment and Proof*

Defendant next contends that, to the extent his actions toward Crescent employee Tom Bryant formed a basis for his conviction, there was a substantial and prejudicial variance between the allegations in the indictment and the proof at trial. The original indictment against defendant had alleged both robbery and extortion under the Hobbs Act. The indictment was subsequently reduced to the charge of extortion only. Defendant contends that the evidence at trial regarding his actions toward Bryant prove, if anything, robbery not extortion. He argues that because the offense of robbery requires a specific intent to steal and because the district court refused to permit him to present evidence on his lack of such intent, he may therefore have been improperly convicted.

■■■ We reject defendant's argument. The threshold question when determining if there has been a prejudicial variance between the indictment and proof is whether there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury verdict. If the court finds a variance, it must then determine whether the defendant has been prejudiced as a result. *United States v. Fischbach and Moore,* 750 F.2d 1183 at 1189 (3d Cir.1984); *see also Kotteakos v. United States,* 328 U.S. 750, 752, 756, 66 S.Ct. 1239, 1241, 1243, 90 L.Ed. 1557 (1946).

■■■ Defendant argues that there was insufficient evidence to support a finding that Bryant "consented" to part with his property, which is an essential element of Hobbs Act extortion. We believe that there was more than substantial evidence for the jury to conclude that, after being threatened and struck, Bryant *consented* to relinquish the property under his control. Thus, we find that there was no variance between the indictment and the proof. The evidence may have shown that defendant was guilty of both extortion and robbery in his conduct toward Bryant. If so, the Government had discretion to prosecute defendant solely on the extortion

---

**15.** It is well settled that the element of "fear" required by the Hobbs Act can be satisfied by placing a person in apprehension of economic loss. *United States v. Brecht,* 540 F.2d 45, 52 (2d Cir.1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977); *see United States v.* *DeMet,* 486 F.2d 816, 819 (7th Cir.1973), *cert. denied,* 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974); *United States v. Addonizio,* 451 F.2d 49, 72 (3d Cir.1971), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972).

charge, and there is no merit to defendant's claim that he should have been charged with the crime to which he had a meritorious defense.

■ Even if the evidence showed that defendant robbed Bryant but did not extort from him, we do not think that such a variance would be prejudicial under the facts of this case. There was sufficient evidence for the jury to convict defendant on the extortion charge because of his actions toward persons present at the Crescent shop other than Bryant.

### VI. *Restrictions on the Presentation of Evidence*

Defendant assigns as error the district court's rulings that excluded or limited the testimony of five defense witnesses. We will consider each one separately.

#### A. *Thomas Nihill*

■ Defendant called Thomas Nihill, a certified public accountant and former IRS agent, as an expert witness. The district court ruled that certain portions of Nihill's testimony must be excluded at trial. This ruling serves as the basis for one of defendant's assignments of error. We note initially that the district court has broad discretion to exclude expert testimony and that the court's actions will be sustained unless they are manifestly erroneous. *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *Breidor v. Sears, Roebuck and Co.*, 722 F.2d 1134, 1138 (3d Cir.1983).

At trial, defendant had sought to assert a defense that Joseph Lam had operated the Crescent Stained Glass business poorly and drove it into such bad financial condition that, rather than fearing defendant's actions on September 13, Lam welcomed them as an excuse he could give to creditors for not paying Crescent's debts. The district court permitted defendant to pursue this defense (A–603). Thus, the court permitted Nihill to testify as to the financial condition of the partnership (A–604). Nevertheless, Nihill was prohibited from testifying that Lam's actions in operating the business constituted embezzlement or had the earmarks of embezzlement (A–604 to A–605). The district court based its restriction on Federal Rule of Evidence 403,[16] arguing that such testimony would confuse the issues, mislead the jury, unfairly prejudice the Government, and constitute cumulative evidence. *See Agnes*, 581 F.Supp. at 477.

■ A district court's evidentiary rulings under Rule 403 are not to be overturned on appeal unless there is a clear showing that the district judge abused his discretion. *United States v. Clifford*, 704 F.2d 86, 89 (3d Cir.1983). To the extent the testimony was relevant to defendant's claim-of-right defense, the trial court properly excluded it since that defense to Hobbs Act extortion could not be entertained in this case. Moreover, the district court's ruling did not prevent defendant from asserting his defense that Lam was not actually placed in fear by defendant's alleged actions. The district court permitted the introduction of sufficient evidence from which defense counsel still could argue—and in fact did so in closing argument (*see* GA–330 to GA–340, GA–357)—that Lam had embezzled partnership funds and had welcomed defendant's actions as an excuse for defrauding creditors. We conclude, therefore, that the trial court's restriction on Thomas Nihill's testimony was neither manifestly erroneous nor an abuse of discretion.

#### B. *Helene Sandole*

■ Defendant sought the admission of testimony by his girlfriend, Helene Sandole, regarding conversations between them, two of which occurred about a month prior to September 13, 1981. The testimo-

16. Rule 403 provides:
    "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
Fed.R.Evid. 403.

ny was offered not for its truth, but rather to show defendant's state of mind in entering the Crescent shop on September 13—namely, that he believed Lam had embezzled partnership property.

The district court excluded the testimony, arguing that it was irrelevant to any issue at trial. The court contended that the testimony would tend to prove, if anything, defendant's motive for his actions on September 13. *See Agnes,* 581 F.Supp. at 476–77. And, as the district court correctly observed, evidence of motive is not relevant to any element of extortion under the Hobbs Act. The testimony may have supported defendant's claim-of-right theory of defense, but defendant was properly prohibited from asserting such a defense. We therefore find no error in the district court's exclusion of certain portions of Helene Sandole's testimony.

### C. John Metropulos

■ Defendant assigns as error the district court's refusal to admit the testimony of defense witness, John Metropulos, the owner of Chicago Art Glass. In its offer of proof, defense counsel stated that Metropulos would testify as to his business dealings with Joseph Lam, including his receipt of a bad check from Lam, the fact that he tried to get Lam arrested as a result, and that Lam told him that Crescent's debt could not be paid because defendant had taken money from the business (A–538 to A–539).

The Government objected to the introduction of Metropulos' testimony on the grounds that it was extrinsic evidence of prior conduct by Lam for the purpose of attacking Lam's credibility and, as such, was inadmissible under Fed.R.Evid. 608(b).[17] The district court sustained the Government's objections and barred the testimony under Rule 608(b) and under Rule 403 because it was needlessly cumulative (A–541). In its ruling on post-trial motions, the court also rejected defendant's

theory that Metropulos' testimony was admissible as extrinsic evidence of a prior inconsistent statement by Lam. *See Agnes,* 581 F.Supp. at 476. We conclude that the court did not abuse its discretion in excluding Metropulos' testimony for the reasons it stated.

■ Defendant now asserts, for the first time on appeal, that one portion of Metropulos' testimony—his conversation with Lam in which Lam told him that defendant had taken money from the business—was admissible to support defendant's defense theory that Lam had welcomed the September 13, 1981, incident as a means of defrauding creditors. It is not necessary for this court to decide whether the testimony would have been so relevant. Because defendant did not offer this defense theory at trial as a justification for admission of Metropulos' testimony, we will not fault the court for possibly failing to consider this theory as a basis for admitting the testimony. *See United States v. Palmeri,* 630 F.2d 192, 201 (3d Cir.1980), *cert. denied,* 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981); *Government of Virgin Islands v. Edinborough,* 625 F.2d 472, 475–76 (3d Cir.1980). We therefore reject defendant's claim that the district court erred in excluding the testimony of John Metropulos.

### D. William Levine

A Government witness, Mary Anne Zelenevich, testified under cross-examination that defendant had contacted her in an effort to enlist her help in a scheme to frame Joseph Lam. During the presentation of the defense, defendant wished to call William Levine to testify that he had been present during the conversation between defendant and Zelenevich and that it was, in fact, Zelenevich who suggested the scheme to frame Lam.

The trial court excluded Levine's testimony for two reasons. First, the court con-

---

**17.** Rule 608(b) provides in part:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of a crime as provided in rule 609, may not be proved by extrinsic evidence."
Fed.R.Evid. 608(b).

cluded that the offer of Levine's testimony was an effort to impeach the credibility of a Government witness (Zelenevich) by extrinsic evidence of specific prior conduct and, as such, was barred by Rule 608(b). The court also found that, because the testimony was relevant only to collateral issues of the trial,[18] it would serve to confuse and mislead the jury and involve undue prejudice and a needless waste of time (A–403 to A–404). Thus, the court also excluded the testimony under Rule 403. The court's ruling under Rule 403 was a proper exercise of its discretion.

■■■■■ Defendant also asserts that the testimony was admissible as extrinsic evidence of prior inconsistent statements or behavior by the Government witness Zelenevich. Yet the proffered testimony would not have tended to prove that Zelenevich had made any prior statement or engaged in any expressive behavior, concerning the subject of her testimony, that was inconsistent with her statements at trial. Levine's testimony was offered merely as a different version of the events about which Zelenevich testified. Furthermore, even if Levine's testimony could be construed as evidence of a prior inconsistent statement by Zelenevich, it would still be inadmissible because it relates to a collateral matter. *See Wade v. Haynes,* 663 F.2d 778, 783 (8th Cir.1981), *aff'd,* 461 U.S. 30, 103 S.Ct. 1625 (1983); *United States v. Nace,* 561 F.2d 763, 771, 75 L.Ed.2d 632 (9th Cir.1977); *United States v. Blackwood,* 456 F.2d 526, 531 (2d Cir.), *cert. denied,* 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1972). The district court is accorded broad discretion to restrict the admission of evidence regarding collateral matters. *See Hamling v. United States,* 418 U.S. 87, 124–25, 94 S.Ct. 2887, 2911–12, 41 L.Ed.2d 590 (1974); *United States v. Colson,* 662 F.2d 1389, 1392 (11th Cir.1981).

We conclude, for the reasons stated, that the court did not abuse that discretion.

### E. *Lynn Watkeys*

■■■■ Defendant offered the testimony of Lynn Watkeys to show that Joseph Lam had a poor reputation in the community for truthfulness and that Lam had engaged in fraudulent dealings with Watkeys—one of his creditors—in the period after September 13, 1981 (A–440 to A–446). The court permitted Watkeys to testify regarding Lam's reputation in the community for truthfulness but excluded any testimony regarding alleged fraudulent dealings by Lam (A–446).

Defendant asserts that the excluded testimony was relevant to his defense theory that Lam was not placed in fear by defendant's actions on September 13, because Lam had thought to use the incident as an excuse for not paying his creditors. Nevertheless, the district court concluded that Watkeys' testimony would not be relevant to this defense theory because it concerned Lam's actions after September 13, 1981. As such, it would not tend to demonstrate Lam's bias or motive to lie on the witness stand concerning the events of that date. Moreover, the court reasoned, even if the testimony was relevant to the theory of defense, it was needlessly cumulative and thus excludable under Rule 403. Finally, the court explained that the testimony, which, if anything, would only tend to show specific instances of misconduct by Lam, was inadmissible under Rule 608(b). *Agnes,* 581 F.Supp. at 475–76.

Once again, we find the district court's ruling to be well supported in the record. We therefore hold that the ruling did not constitute an abuse of discretion by the court. •

---

**18.** As the trial court correctly observed in its ruling on defendant's post-trial motions, the conversation that was the subject of Levine's testimony occurred after September 13, 1981, and thus was collateral to the issue of defendant's intent or motive on September 13. More-

over, the issue of a possible scheme to frame Lam originated in the defense counsel's cross-examination of Zelenevich and was not raised by the Government in its case in chief. *Agnes,* 581 F.Supp. at 475.

## VII. *Exemption from Sequestration Order*

Upon defense counsel's motion at trial, the district court ordered the sequestration of all witnesses pursuant to Federal Rule of Evidence 615.[19] Defense counsel then requested that Helene Sandole be exempt from the sequestration order under Rule 615(3). In support of the request, counsel stated that Sandole had served the defense as an investigator in the preparation for trial. The Government objected, claiming that Sandole was defendant's girlfriend and that she was not essential to the defense as required by Rule 615(3). The district court agreed with the Government's position and, therefore, refused to exempt Sandole from the sequestration order.

■■■ We observe initially that the decision not to sequester witnesses because they are "essential" under Rule 615(3) is within the sound discretion of the district court, and a reversal on appeal will be made only upon a showing of an abuse of that discretion. *See Government of Virgin Islands v. Edinborough*, 625 F.2d 472, 475 (3d Cir.1980); *United States v. Maestas*, 523 F.2d 316, 321 (10th Cir.1975). In ruling on defendant's request initially, the district court incorrectly stated that it had no discretion under Rule 615(3) to allow Sandole to remain in the courtroom (GA-7). Yet, after further debate by both parties, the court adopted the Government's position that, notwithstanding the court's discretion in this matter, Sandole did not qualify as an "essential" person contemplated by Rule 615(3) (GA-5 to GA-9).[20]

Defendant relies principally on this court's recent opinion in *Government of Virgin Islands v. Edinborough*, 625 F.2d 472 (3d Cir.1980), as authority for the proposition that Sandole does fall within the exception created by Rule 615(3). In *Edinborough*, the court, in dicta, interpreted Rule 615(3) broadly to permit the mother of a young rape victim to remain in the courtroom while her daughter was testifying.[21] The court set forth guidelines in applying Rule 615(3):

> "A party who believes that the presence of the witness is 'essential' must bear the burden of supporting that allegation and showing why the policy of the Rule in favor of automatic sequestration is inapplicable in that situation. The party desiring sequestration must then be given an opportunity to show why sequestration is needed. Finally, the trial court should explicate the factors considered if sequestration is denied."

*Edinborough*, 625 F.2d at 476.

Although, in this case, defense counsel informed the district court that Sandole had greatly assisted in the preparation of the defense and that her absence from the courtroom would result in delays at trial (GA-7), the court apparently concluded that she was not essential to the presentation of the defense. Moreover, as the district court stated in its ruling on post-trial motions, defendant failed to sustain the relevant burden of proof as articulated in *Oli-*

---

**19.** Rule 615 provides as follows:

"At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause."
Fed.R.Evid. 615.

**20.** The Government, citing the Notes of the Advisory Committee on Proposed Rules, argued that a person in a position such as Sandole's was not intended to be included in the scope of Rule 615(3) (GA-8 to GA-9). The Committee had stated:

"The category contemplates such persons as an agent who handled the transaction being litigated or an expert needed to advise counsel in the management of the litigation."
Fed.R.Evid. 615, Notes of Advisory Committee on Proposed Rules.

**21.** The court's holding in *Edinborough* was based solely on the defendant's failure to demonstrate that he was prejudiced as a result of the court's refusal to sequester the mother of the prosecuting witness while that witness was testifying. *Edinborough*, 625 F.2d at 474.

ver B. Cannon and Son v. Fidelity and Cas. Co., 519 F.Supp. 668 (D.Del.1981). See Agnes, 581 F.Supp. at 474. In Cannon, the court called for a showing that the witness

"... has such specialized expertise or intimate knowledge of the facts of the case that a party's attorney could not effectively function without the presence and aid of the witness or that the witness would be unable to present essential testimony without hearing the trial testimony of other witnesses."

Id. at 678; see also Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 175 (3d Cir.1977) (party desiring a particular witness to be excluded from sequestration order has burden to show that the witness is essential to the presentation of the case). Defendant may have shown that Sandole's presence at trial would be helpful to the presentation of the defense, but he did not demonstrate that her presence was essential to his cause.

In objecting to Sandole's exclusion from the sequestration order, the Government most likely feared that, because she was defendant's girlfriend, she would be able to modify her testimony to favor the defendant based on the testimony of others and the conduct of the trial (see GA–6). See Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1373 (5th Cir.1981); Taylor v. United States, 388 F.2d 786, 788 (9th Cir. 1967). The district court adopted the Government's rationale (see GA–9) and, in its post-trial opinion, explained that because of the close personal relationship between defendant and Sandole, the possibility of collusion and fabrication of testimony was present. Agnes, 581 F.Supp. at 474.

We hold that the district court did not abuse its discretion in refusing to exempt Helene Sandole from the sequestration order. The defendant failed to demonstrate that Sandole's presence at trial was essential to the presentation of the defense, as is necessary for an exemption under Rule 615(3). Moreover, because Sandole was the girlfriend of the defendant, there was an increased possibility that she would modify her testimony to comport more fully with that of other defense witnesses. Although we agree with defendant that, at the trial, the district court should have stated more explicitly its reasons for refusing to exempt Sandole, we conclude that the trial court's failure to do so does not constitute reversible error.[22]

## VIII. Summary

In summary, the trial court did not err in refusing to permit defendant to present evidence in support of his claim-of-right defense. Defendant's claim that the trial court improperly instructed the jury on the mens rea element of Hobbs Act extortion will not be heard on appeal because of his failure to raise a timely objection at trial. The court's instructions regarding the potential victims of extortion in this case were correct. There was no variance between the indictment and proof with respect to defendant's actions toward Thomas Bryant. Finally, the district court did not abuse its discretion either in restricting the testimony of several defense witnesses or in refusing to exempt Helene Sandole from its sequestration order.

Accordingly, we will affirm the judgment of the district court.

22. The Government also argues that the defendant's claim should be rejected because he has not shown any prejudice resulting from the court's refusal to exempt Sandole from the sequestration order. See Marathon Pipe Line v. Drilling Rig Rowan/Odessa, 699 F.2d 240, 242 (5th Cir.), cert. denied, —— U.S. ——, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983). The district court's post-trial opinion supports the proposition that defendant was not prejudiced by Sandole's sequestration. The court observed that defense counsel vigorously and effectively examined and cross-examined witnesses without Sandole's assistance. Moreover, the court noted, the defense counsel's constant consultation with the defendant indicated that it was the defendant who was directing his own defense. United States v. Agnes, 581 F.Supp. 462, 474 (E.D.Pa. 1984). Nevertheless, because defendant requested a hearing from the district court to show prejudice, see Defendant's Memorandum of Law in Support of Post-Trial Motions, p. 39, and did not receive it, we do not rest our holding on defendant's failure to show prejudice.