**UNITED STATES of America, Appellee,**

v.

**John GOLE, Defendant–Appellant.**

**Docket No. 97–1453.**

United States Court of Appeals, Second Circuit.

Argued April 14, 1998.

Decided Oct. 16, 1998.

Paula Frome, Garden City, NY (James O. Druker, Kase & Druker, on brief), for Appellant.

Joel M. Cohen, Brooklyn, NY (Zachary W. Carter, United States Attorney for Eastern District of New York, Peter A. Norling, on brief), for Appellee.

Before: FEINBERG, JACOBS and MAGILL,* Circuit Judges.

---

* The Honorable Frank Magill, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

MAGILL, Circuit Judge:

John Gole, a retired firefighter with the New York City Fire Department (NYCFD), filed false income reports to retain pension overpayments made by the NYCFD Pension Bureau. After Gole's misrepresentations were discovered, Gole was charged and convicted of mail fraud under 18 U.S.C. § 1341 (1994). Gole argues that the district court erred by not allowing him to present evidence that he was actually entitled to the money he obtained by misrepresenting his income. We affirm.

## I.

After sustaining a service-related disability as a firefighter, Gole retired in 1988 and began receiving disability income from the NYCFD Pension Fund. Gole was entitled to his full pension if his annual earnings remained below a certain amount (Safeguard Amount), determined by a formula set forth in the New York City Administrative Code. If his earnings exceeded the Safeguard Amount, his pension would decline accordingly. Gole received his full pension in 1991, 1993, and 1994, despite earning in excess of the Safeguard Amount. Gole did not complete annual income report forms for these years because the NYCFD Pension Bureau failed to send Gole the required forms. After receiving the forms in 1995, Gole underreported his earnings for 1991, 1993, and 1994 to be less than the Safeguard Amount. This enabled Gole to retain the pension overpayments he had received. Gole felt he was entitled to under-report his income because he believed that the NYCFD Pension Bureau improperly calculated the Safeguard Amount by misapplying the Administrative Code formula, resulting in an inordinately low Safeguard Amount. According to Gole, his earnings did not exceed the correctly calculated Safeguard Amount in 1991, 1993, and 1994, and he should therefore have been entitled to retain his full pension.

Gole was charged with one count of mail fraud on January 13, 1997. At trial, the district court did not permit Gole to present evidence that the Safeguard Amount was incorrectly calculated. In fact, the jury was instructed that

the defense of good faith is not available to a defendant who deliberately makes a representation that he knew to be false, even if the defendant reasonably believed that he was legally entitled to the money he was seeking to obtain by such a false representation. Accordingly, it is not relevant to your consideration of the guilt or innocence of the defendant whether the formula used to determine the [Safeguard Amount] was correctly calculated, or whether the defendant believed that it was wrongly calculated.

Trial Tr. at 431, *reprinted in* App. at 82. Gole was convicted of mail fraud and sentenced to one year probation and 200 hours of community service. Gole appeals.

## II.

■ The federal mail fraud statute provides that:

Whoever, having devised ... any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses ... for the purpose of executing such scheme ... places in any post office ... any matter or thing whatever to be sent or delivered by the Postal Service ... shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 1341 (1994). The essential elements of a mail fraud violation are (1) use of the mails to further (2) a scheme to defraud with (3) money or property as the object of the scheme. *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir.1996). Gole does not dispute that he used the mails to misreport his income, and it is clear that money was the object of Gole's endeavor because he misrepresented his income to keep money he would otherwise have been obligated to return.

■ Gole argues, however, that he was not engaged in a scheme to defraud. In order to establish a scheme to defraud, the government must prove that Gole had a specific intent to defraud. *United States v. Rodolitz*, 786 F.2d 77, 80 (2d Cir.1986). Fraudulent intent is established when "'some actual harm or injury was *contemplated* by the schemer.'" *Dinome*, 86 F.3d

at 283 (quoting *United States v. D'Amato,* 39 F.3d 1249, 1257 (2d Cir.1994)). While Gole admits that he intentionally misrepresented his income in order to retain pension overpayments, he argues that he lacked fraudulent intent because he believed that the NYCFD Pension Bureau improperly calculated the Safeguard Amount, and, under a proper calculation of the Safeguard Amount, he would be entitled to the overpayments. Thus, according to Gole, the district court abused its discretion in excluding evidence that the NYCFD Pension Bureau improperly calculated the Safeguard Amount.

We review the district court's evidentiary rulings for an abuse of discretion. *Malek v. Federal Ins. Co.,* 994 F.2d 49, 54 (2d Cir.1993). However, it is well established that "[t]he legal sufficiency of a proffered defense is a question of law and therefore is reviewed de novo." *United States v. Santiago–Godinez,* 12 F.3d 722, 726 (7th Cir.1993). Gole argues that he did not intend to harm the NYCFD Pension Fund because he had a claim-of-right to the pension overpayments. Although a claim-of-right to money obtained through deception was a defense to the traditional common law crime of false pretenses, the mail fraud statute does not mention this as a defense, *see* 18 U.S.C. § 1341, and the Supreme Court long ago rejected the argument that the mail fraud statute " 'reaches only such cases as, at common law, would come within the definition of false pretences.' " *McNally v. United States,* 483 U.S. 350, 356–57, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) (quoting *Durland v. United States,* 161 U.S. 306, 312, 16 S.Ct. 508, 40 L.Ed. 709 (1896)) (other quotations omitted). Moreover, courts have uniformly held that a claim-of-right is not a defense to mail fraud. *See United States v. Casey,* 951 F.2d 892, 894 (8th Cir.1991) (victim's debt to defendant in excess of the amount obtained by defendant through fraud is irrelevant to mail fraud liability); *United States v. Richman,* 944 F.2d 323, 330 (7th Cir.1991) ("mail fraud does not include a requirement that the defendant receive or intend to receive money or property in excess of an amount he was entitled to receive" (quotations and alterations omitted)); *cf. United States v. Agnes,* 753 F.2d 293, 299 (3d Cir.1985) (no claim-of-right de-

fense to extortion under the Hobbs Act); *United States v. Pignatelli,* 125 F.2d 643, 646 (2d Cir.1942) (rejecting claim-of-right defense for extortion, and explaining that "[t]hreats to damage another's reputation are no proper means for determining a controversy. It may be adjusted either by suit or by compromise but settlement must not be effected by using defamation as a club").

In addition, common sense commands us to reject the purported defense. If Gole's theory of self-help were the law, anyone who believed that he was legally entitled to benefits from a pension plan, or an insurance policy, or a government program, but who was concerned that he or she might nevertheless be denied such benefits, would be given carte blanche simply to lie to obtain those benefits. Such a course of action would often be much easier than pursuing legal remedies through civil actions in court, and would guarantee success as long as the misrepresentation remained undiscovered. We will not encourage people to lie to obtain benefits rather than pursue their rights in civil actions. Such controversies may be resolved by civil suit or settlement, but cannot be won by using lies and deception.

Gole argues that this Court's recent decision in *United States v. Rossomando,* 144 F.3d 197 (2d Cir.1998), requires that his conviction be reversed. We disagree. Although *Rossomando* arose in nearly identical circumstances concerning income forms completed by another disabled fireman, that case turned on the defendant's knowledge of the immateriality of the false statements he made. In *Rossomando,* "the essence of Rossomando's defense was not that he thought the [NYCFD] Pension Fund would not 'ultimately' lose money, but that he thought it was never going to lose money because his income was well below the level at which the false information he provided would become *relevant.*" 144 F.3d at 202 (emphasis added). This Court found reversible error in the trial court's instruction to the jury to convict Rossomando even if the jury thought Rossomando honestly believed his misreported income would not affect the NYCFD Pension Fund's calculation of his pension. In contrast, Gole admitted to knowing that lying on his income

report would affect the NYCFD Pension Fund's calculation of his pension. We therefore find *Rossomando* distinguishable, and reject Gole's argument that *Rossomando* requires reversal in this case.

Accordingly, we affirm the judgment of the district court.[1]

JACOBS, Circuit Judge, concurring.

I concur in the majority opinion and accept its reasoning. I write separately to add a couple of observations provoked by the difference in result between this case and *United States v. Rossomando*, 144 F.3d 197 (2d Cir.1998).

The two cases are arrestingly similar: both involve recipients of New York City Fire Department disability pensions who earned non-pension income above the Pension Fund's Safeguard Amount and were convicted of mail fraud for falsely representing on disclosure forms filed with the Pension Fund that their level of income was below the Safeguard Amount. The sole difference in conduct and circumstance between this case and *Rossomando* is the defendants' explanations of their state of mind when they completed the disclosure forms: (a) Gole conceded that he understood his income was above the Safeguard Amount as promulgated by the Pension Fund but argued that the Fund's interpretation was inconsistent with the governing regulation; (b) Rossomando claimed that he believed, based on conversations with union personnel, that his income was so far below the Safeguard Amount that the actual dollar amount was immaterial to the Pension Fund and its deliberations.

The majority opinion distinguishes *Rossomando* on the ground that Rossomando *knew* "the immateriality of the false statements he made," while "Gole admitted to knowing that lying on his income report would affect the NYCFD Pension Fund's calculation of his pension." Majority op. [at 168–69]. *Rossomando* is thus limited to the quite peculiar

facts that compelled the *Rossomando* result under the only holding that *Rossomando* will support: a defendant's belief that information is immaterial to a disbursement decision amounts to a defense to mail fraud only if the disbursement is mechanical as opposed to discretionary, *see Rossomando,* 144 F.3d at 201 n. 5, and a jury finds that such a belief is reasonable, guided by a charge that presumably gives guidance on the (in part legal) question of what is reasonable and what is not.

A troubling feature of this case and *Rossomando*—and in my view, the circumstance that places strain on the intent element of the mail-fraud prosecutions in both cases—is that the defendant union members were caught up in a larger dispute over the Safeguard Amount. The regulation governing the Safeguard Amount requires that the pension payments be reduced to the extent that the total of outside earnings and pension exceed the "current maximum salary for the title next higher than that held by" the firefighter at retirement. N.Y. City Admin. Code, tit. 13, §§ 356–57.

The use of the word "salary" (under any normal usage) would seem to rule out consideration of overtime pay. No reference to "overtime" appears in the regulation, and no definition is given (an odd omission if overtime were intended to be payable to persons no longer working as firefighters).

Nevertheless, the Pension Fund trustees have agreed to supplement the Safeguard Amount to reflect the overtime hours of the disabled firefighter in the year prior to his disability (paid at the rate of the next highest rank). And prior to 1996, the trustees supplemented the Safeguard Amount with the average overtime from the disabled firefighter's three years of highest overtime. The union has taken the even more aggressive position that the Safeguard Amount should be calculated by reference to the actual salary and overtime of the *highest paid firefighter in the next highest rank* in the given year

---

1. Gole also argues that the jury was incorrectly charged and that the government prejudiced him by changing its theory of criminal liability. We disagree. Because Gole was guilty of mail fraud even if the Safeguard Amount was incorrectly calculated, the jury was correctly charged. Be-

cause the government's theory of prosecution never required it to prove that the NYCFD Pension Bureau had correctly calculated the Safeguard Amount, its theory of prosecution did not change. Thus, Gole's remaining claims are meritless.

(*i.e.*, not the disabled firefighter). That position, if adopted, would have resulted in a much higher Safeguard Amount in each of the years in question. Understandably, the union has elected not to present its position in an arbitration, and instead appears to have represented to its members that the Pension Fund's calculations were incorrect and that the pensioners were being cheated.

A charitable view of the union's role is that an undetermined number of the disabled members, after consulting with union officials, understood the union's advice as an implicit suggestion that they misstate their non-pension income information to get their due. A review of this case and *Rossomando* justifies the conclusion that the Pension Fund trustees and the union tolerated or inspired a raid on pension funds for which the firefighters are the only ones being held accountable.