**UNITED STATES of America,**
**Appellee,**

v.

**James M. SVENDSEN, Defendant–**
**Appellant.**

No. 00–1695.

United States Court of Appeals,
Second Circuit.

May 17, 2001.

Edward F. Westfield, New York, NY, for appellant.

Cecil C. Scott, Assistant United States Attorney; Loretta E. Lynch, United States Attorney for the Eastern District of New York, Susan Corkery, Assistant United States Attorney, on the brief, Brooklyn, NY, for appellee.

Present STRAUB, POOLER, Circuit Judges, KORMAN, District Judge.*

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Defendant-appellant James M. Svendsen ("Svendsen") appeals from a judgment of the United States District Court for the Eastern District of New York (I. Leo Glasser, *Judge* ) convicting him, following a trial by jury, of a single count of mail fraud in violation of 18 U.S.C. § 1341. At trial, the government contended that Svendsen, a retired firefighter who was receiving a disability pension, intentionally understated his income from employment in 1994 on a New York City Fire Department Pension Fund Safeguard Questionnaire in order to avoid a reduction in his disability pension payments.

The Pension Fund permits a retired firefighter with less than twenty years of service to earn outside income while receiving his disability pension, but limits the amount a firefighter may earn before being required to reimburse the excess to the Pension Fund. This limit is known as the "Safeguard Limitation." *United States v. Rossomando*, 144 F.3d 197, 198 (2d Cir. 1998). The Safeguard Limitation is determined by calculating the "current maximum salary" of the next highest rank to that at which the pensioner retired. N.Y. City Admin.Code tit. 13, ch. 3, § 356(a). Many of Svendsen's arguments on appeal concern the "Current Maximum Salary Rule." The "Current Maximum Salary Rule" defines the salary basis of the next highest rank as including base-pay, appropriate longevity and holiday pay but does not explicitly include overtime earned by members of the next highest rank. Svendsen contends that this rule may be reasonably interpreted (indeed, Svendsen now asserts he had so interpreted it) to include the overtime earned by firefighters of the next highest rank. If "current maximum salary" includes overtime, Svendsen's outside earnings plus his pension income would not have exceed the Safeguard Limitation. Thus, Svendsen's argument continues, Svendsen would not have been required to reimburse the Pension Fund and would have a viable defense to mail fraud.

On appeal, Svendsen argues that he received ineffective assistance of counsel because his attorney (a) failed to object to

---

* The Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

the admission or even investigate the validity of the Pension Fund's Current Maximum Salary Rule and (b) failed to investigate or offer evidence concerning the earnings of six Fire Department lieutenants (the next highest rank to Svendsen's), evidence that would have shown that Svendsen's misrepresentations were not material. Svendsen also argues that the government failed to prove his specific intent to defraud. Svendsen further contends that the jury charge permitted the jury to convict him on a legally inapplicable theory.

## DISCUSSION

### 1. Validity of Current Maximum Salary Rule

■ Svendsen first argues that the Current Maximum Salary Rule was not validly adopted because the Pension Fund's Board of Trustees allegedly failed to comply with the procedural requisites for rulemaking. Therefore, Svendsen asserts, he could not be prosecuted for violating this rule and his trial counsel was ineffective in failing to discover this defect.

Even if the rule were invalid, an issue we do not decide, Svendsen's arguments fail. Svendsen was not prosecuted for his violation of this rule, but for his intentional misrepresentation of his outside earnings on the Safeguard Questionnaire in order to avoid a reduction in his pension payment. Thus, his intent to defraud the Pension Fund was at issue, not his intent to violate the Current Maximum Salary Rule. *See, e.g., Dennis v. United States*, 384 U.S. 855, 865, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) ("The indictment here alleges an effort to circumvent the law and not to challenge it."); *United States v. Weiss*, 914 F.2d 1514, 1522–23 (2d Cir.1990) (affirming conviction for mail fraud; "it is no defense to a charge of filing false statements that the government document that prescribed the details of filing had not been approved by the Director of the Office of Management and Budget, as the Paperwork Reduction Act allegedly required.").

### 2. Sufficient Evidence of Specific Intent

■ Viewing the evidence in the light most favorable to the government and drawing every permissible inference in its favor, we must determine whether any rational jury could have found beyond a reasonable doubt that Svendsen acted with fraudulent intent. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When Svendsen first retired in 1989, he received a letter from the Pension Bureau informing him that he was "permitted to earn, on an annual basis, no more than the difference between his annual pension and the current salary for the next highest rank at the time of retirement. As of this date, your MAXIMUM ANNUAL EARNINGS figure is: $19,354.00." Although the letter also informed Svendsen that this figure would be recalculated to reflect any salary adjustments, it provided him with a frame of reference for the amount which he could not earn above. One of the co-founders of Svendsen's construction company testified that he remembered Svendsen stating during 1994 that Svendsen "hoped he doesn't make too much money because it might hurt him[ ] ... because he was ... not allowed to make × amount of dollars." Svendsen also told this witness that he "was concerned about making more than he was allowed to be making[ ]." Svendsen testified that before he completed the Safeguard Questionnaire for the year in question, he received and read the instructions accompanying the Questionnaire. The instructions defined reportable earnings pursuant to the Current Maximum Salary Rule. Specifically, they defined "sal-

ary" as "base-pay, appropriate longevity and holiday pay" and added the current value in dollars for the overtime performed by the pensioner in his final year of service.[1] However, "salary" was not defined with reference to the overtime earned by members of the next highest rank .[2] Despite the fact that his tax returns for 1994 indicated that he earned $50,499, Svendsen falsely stated that he had 0 outside earnings for 1994 on the Safeguard Questionnaire, which explicitly requested that he report such earnings, including those from self-employment. Svendsen both signed and certified that to the best of his knowledge, the information he provided was correct. Viewing this evidence in a light most favorable to the government, we find that there was sufficient evidence to support his conviction.

### 3. Counsel's Failure to Investigate the Lieutenants' Total Earnings

■ Svendsen asserts that the term "current maximum salary" is ambiguous and that it may reasonably be construed to include the actual earnings, including overtime, of the members of the next highest rank. Svendsen asserts his trial counsel was ineffective in failing to research the lieutenants' actual earnings, which exceeded Svendsen's combined income from his pension payments and outside employment. Had counsel done so, he could have shown that Svendsen reasonably believed that he did not need to report his earnings

to the Pension Fund because they would have been below the Safeguard Limitation. Thus, Svendsen's misrepresentations would not have been material and therefore not indicative of an intent to defraud.

Svendsen's ineffective assistance claim also fails. First, it is unclear whether this defense would have been viable. Both "salary" as used in the Administrative Code and "base pay" as used in the rule appear to exclude overtime. *See Gole*, 158 F.3d at 169 (Jacobs, J., concurring). There is no indication either in the Administrative Code or in the materials given to Svendsen that the inclusion of the next highest rank's overtime was contemplated. Rather than pursue this defense, Svendsen's trial counsel chose to advance several different defenses. At trial, Svendsen and his counsel argued that Svendsen believed he was exempt from the reporting requirements, which spoke of "self-employment when one's physical effort is a factor," because his work did not involve physical labor. Svendsen also asserted that he never knew what the Safeguard amount was. Finally, his defense counsel extensively cross-examined an accountant for the Pension Fund in an attempt to show that the questionnaire was extremely complicated and likely to confuse the reader.

■ Counsel's alleged error in not pursuing this defense may be no more than a plausible tactical decision, especially given

---

1. Svendsen did not work any overtime during his final year of active employment.

2. Regardless whether this rule is valid, this instruction provides Svendsen with notice of what the Pension Fund had established as the Safeguard Limitation. Because the Pension Fund required Svendsen to repay any amount above what it defined as the Safeguard Limitation, Svendsen's withholding of his actual earnings would deprive the Pension Fund of the amount to which it was entitled. The issue again is whether Svendsen specifically

intended to deprive the Pension Fund of money or property. *See United States v. Gole*, 158 F.3d 166, 169 n. 1 (2d Cir.1998), *cert. denied*, 526 U.S. 1078, 119 S.Ct. 1481, 143 L.Ed.2d 564 (1999) (noting that even if Gole had been correct that the safeguard amount had been incorrectly calculated, he was still guilty of mail fraud because the government never had to prove that the Pension Fund correctly calculated the amount but only that Gole intended to defraud it).

the 1989 letter informing Svendsen that his maximum annual earnings could not exceed $19,354. *See, e.g., United States v. Diaz*, 176 F.3d 52, 113 (2d Cir.), *cert. denied*, 528 U.S. 875, 120 S.Ct. 181, 145 L.Ed.2d 153 (1999) (finding that decision not to present a defense was a sound trial strategy that fell within the wide range of professional assistance). "[W]e have repeatedly noted our reluctance to second-guess matters of trial strategy simply because the chosen strategy was not successful." *Cuevas v. Henderson*, 801 F.2d 586, 590 (2d Cir.1986) (internal quotation marks omitted). Even presuming that his trial counsel were constitutionally ineffective, Svendsen has not shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As mentioned previously, the evidence was more than sufficient for the jury to have inferred Svendsen's criminal intent.

### 4. Jury Charge

■ Relying on our decision in *Rossomando*, where we noted that the government could not rely on a "right to control" theory to support a mail fraud conviction in cases concerning this Pension Fund because the Safeguard Limitation calculation was purely mechanical, 144 F.3d at 201 n. 5, Svendsen argues that the jury charge improperly allowed the jury to consider an impermissible theory of guilt based on the false premise that the information withheld by Svendsen had some "independent value" to the Pension Fund. Svendsen objects to the portion of the jury charge describing an "intent to defraud:" "And when we speak of an intent to defraud, we mean to act knowingly with a specific intent to deceive for the purpose of causing some financial loss *or some action or no*

*action to be taken by somebody else.*" (emphasis added).

Because Svendsen failed to object to the charge, we review for plain error. *United States v. Berkovich*, 168 F.3d 64, 66–67 (2d Cir.), *cert. denied*, 528 U.S. 849, 120 S.Ct. 127, 145 L.Ed.2d 107 (1999). Reading the charge as a whole, we find that the charge adequately instructed the jury both that it had to find specific intent to cause the Pension Fund financial loss and that good faith would be a complete defense.

We have reviewed Svendsen's remaining contentions on appeal and find them to be without merit.

### CONCLUSION

For the reasons provided above, the judgment of the District Court is AFFIRMED.