**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 1 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MIKE MOHAMMAD ALAHMAD,
also known as Mohammad Al-Ahmad,

Defendant - Appellant.

No. 98-1465

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D. Ct. No. 98-CR-91-Z)**

---

Howard A. Pincus, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Denver, Colorado, appearing for Defendant-Appellant.

Martha Ann Paluch, Assistant United States Attorney (Thomas L. Strickland, United States Attorney, with her on the brief), Office of the United States Attorney, Denver, Colorado, appearing for Plaintiff-Appellee.

---

Before **TACHA**, **HOLLOWAY**, and **BRORBY**, Circuit Judges.

---

**TACHA**, Circuit Judge.

Defendant Mike Mohammad Alahmad appeals his conviction under the International Parental Kidnapping Crime Act (IPKCA), 18 U.S.C. § 1204. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

Christy Farrell gave birth to Brittny Alahmad in 1985. Brittny lived with Leslie Collins-Pottebaum, Farrell's mother, for the first seven years of her life. In 1990, defendant, Brittny's father, sought visitation rights to Brittny and a custody dispute ensued. A Colorado state court eventually awarded legal custody of the child to defendant in 1992 and granted Collins-Pottebaum and Farrell liberal visitation rights.

Brittny stayed one night a week with Collins-Pottebaum pursuant to the custody order. On April 23, 1993, however, Brittny did not arrive at Collins-Pottebaum's home for a scheduled visit. Collins-Pottebaum learned that defendant had taken Brittny to Jordan, his native land, for ten days. She complained to the Colorado court, which, after a hearing, ordered that defendant not take Brittny from Colorado permanently without leave of the court. After the hearing, defendant reportedly told Collins-Pottebaum that if she continued to make trouble he would take Brittny from her permanently. Defendant repeated this threat on several occasions.

On July 3, 1996, defendant told Collins-Pottebaum that he planned to take

-2-

Brittny to Disneyland for about a week. After several weeks passed without communication from Brittny or defendant, Collins-Pottebaum persuaded the manager of defendant's apartment building to let her into his apartment. Collins-Pottebaum found the apartment nearly empty. On July 29, defendant phoned Collins-Pottebaum, telling her that he and Brittny were in Jordan. Thereafter Collins-Pottebaum and various public authorities were unable to locate either Brittny or defendant.

In March 1997, the Colorado state court found that defendant had violated its 1993 order prohibiting the permanent removal of Brittny from the state. The court issued a new order transferring permanent custody to Collins-Pottebaum. On suspicion of international parental kidnapping, the FBI issued a warrant for defendant's arrest. In February 1998, defendant returned to the United States, leaving Brittny in Jordan. Federal agents arrested him at O'Hare International Airport in Chicago.

A federal grand jury indicted defendant under IPKCA for kidnapping. Defendant moved to dismiss the indictment, and the district court denied the motion. A jury convicted defendant, and defendant filed a timely appeal.

II.

Defendant first argues that the district court misconstrued IPKCA in

-3-

finding that Collins-Pottebaum enjoyed parental rights under the statute.[1]  We

review de novo the district court's statutory interpretation.  Beck v. Northern

Natural Gas Co., 170 F.3d 1018, 1023 (10th Cir. 1999).

IPKCA provides that "[w]hoever removes a child from the United States or

retains a child . . . outside the United States with intent to obstruct the lawful

exercise of parental rights shall be fined under this title or imprisoned not more

than 3 years, or both."  18 U.S.C. § 1204(a).  The act defines "parental rights" as

"right[s] to physical custody of the child - - (A) whether joint or sole (and

includes visiting rights); and (B) whether arising by operation of law, court order,

or legally binding agreement of the parties."  Id. § 1204(b)(2).

At the time that the government prosecuted defendant, Collins-Pottebaum

enjoyed visitation rights under a state court order.  The statute clearly categorizes

"visiting rights" as "parental rights."  Thus, the district court properly applied the

statute to defendant.

Defendant next argues that IPKCA as applied to him violates his equal

protection rights.  Because defendant raises his equal protection claim for the first

time on appeal, we review the district court's denial of his motion to dismiss

under that claim for constitutional plain error.  United States v. Easter, 981 F.2d

---

[1]The government prosecuted defendant for obstruction of Collins-Pottebaum's parental rights.  The indictment did not charge defendant with violating Farrell's rights.

1549, 1558-59 (10th Cir. 1992). Colo. Rev. Stat. § 19-1-117(3) (1999) provides that a "court may not make any order restricting the movement of the child if such restriction is solely for the purpose of allowing the grandparent the opportunity to exercise his grandchild visitation rights." In light of this provision, defendant argues, he could be prosecuted under IPKCA only because both Brittny's mother and grandmother enjoyed visitation rights. However, he claims, a similarly situated parent who shares visitation rights only with a grandmother could not be so prosecuted, because § 19-1-117(3) would invalidate any state court order restricting that parent's movement of the child.

Even assuming that defendant and a parent who shares visitation rights only with a grandparent are similarly situated, the government need only "demonstrate a rational basis for the disparate treatment." United States v. Woods, 888 F.2d 653, 656 (10th Cir. 1989) (citing Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440-41 (1985)). We find that the state has a rational basis to protect the shared visitation rights of parents and grandparents more forcefully than the visitation rights of grandparents alone. The federal government, in its IPKCA prosecution of defendant, was simply aiding the enforcement of a valid state court order. The district court therefore committed no plain constitutional error in failing to dismiss defendant's indictment on this late-proffered ground.

Defendant's third argument is that the district court improperly admitted

into evidence a redacted version of the Colorado court's 1997 order transferring custody of Brittny to Collins-Pottebaum. Defendant argues that the order was not relevant to his intent in July 1996, and alternatively, that any relevance was outweighed by its likely prejudicial impact. We review a decision to admit evidence for abuse of discretion. United States v. Knox, 124 F.3d 1360, 1363 (10th Cir. 1997).

Evidence is relevant when it bears any tendency to render a fact that is of consequence to the determination of an action more or less probable. Fed. R. Evid. 401. Under this standard, the 1997 order was relevant. Defendant himself introduced the 1993 order at trial, claiming that he acted within the custody provisions of that order. The 1997 order, in which the Colorado court determined that defendant had violated its 1993 order, clearly rendered defendant's allegations less probable.

Fed. R. Evid. 403 prohibits the admission of relevant evidence if the danger of unfair prejudice substantially outweighs the probative value. Because almost all evidence will be perceived as prejudicial by one side or the other, "it is generally thought that the jury can best determine the truth when it has access to all the relevant admissible evidence." SEC v. Peters, 978 F.2d 1162, 1171 (10th Cir. 1992).

Defendant argues that the jury gave exaggerated or controlling weight to

the 1997 order when determining his intentions in 1996.  We disagree.  Even if the jury found the 1997 order persuasive, it does not follow that the jury gave too much weight to the order.  Defendant had every opportunity to argue to the district court that he had in fact complied with the 1993 order.

Furthermore, there was abundant <u>additional</u> evidence from which the jury could infer defendant's intentions when he took Brittny from the United States.  This evidence included (1) defendant's repeated threats to take Brittny permanently from Collins-Pottebaum; (2) defendant's false representations to Collins-Pottebaum about the Disneyland trip; (3) defendant's empty apartment, discovered shortly after he took Brittny from the country; and (4) defendant's failure to communicate with Collins-Pottebaum apart from his single call from Jordan.

Finally, defendant claims that the 1997 order constituted inadmissible hearsay.  "Appellate review is particularly deferential where an evidentiary ruling concerns the admission of alleged hearsay evidence."  <u>Knox</u>, 124 F.3d at 1363.  Under Fed. R. Evid. 802, hearsay evidence that does not meet an exclusion or exception is generally inadmissible at trial.  Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted.  Fed. R. Evid. 801.  Defendant maintains that the 1997 order constituted hearsay evidence because the Colorado judge who entered

the order did not testify at defendant's federal trial, and the government offered it to prove that defendant violated the 1993 order. Although we doubt defendant's characterization of the 1997 court order, we need not consider the applicability of the hearsay rule to this case.[2] The jury had more than ample grounds from which to infer that defendant willfully violated the 1993 order. Thus, any error in admitting the 1997 order was harmless, and we must therefore disregard it. Fed. R. Crim. P. 52(a) ("**Harmless Error.** Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); United States v. Wacker, 72 F.3d 1453, 1473 (10th Cir. 1996) (concluding that an error is deemed harmless "unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect") (internal quotation marks and citation omitted).

We also deny defendant's motion to submit a supplemental opening brief. To the extent that the motion argues issues currently before the Supreme Court, we find that the arguments have no bearing on this case at this time.

AFFIRMED.

---

[2]Defendant analogizes the 1993 order to two judicial pronouncements which we found to constitute inadmissible hearsay in United States v. Zimmerman, 943 F.2d 1204, 1211 (10th Cir. 1991). The statements erroneously admitted in Zimmerman were (1) an observation made by one judge during a discovery hearing, and (2) a letter written to the United States Attorney's Office by another judge. Both statements were offered not to rebut an affirmative defense, as was the case here, but as conclusions by the judges that the defendant's law firm, and by implication the defendant, was guilty. Such statements obviously are not on a par with the final order before us.