08-1152-cr
USA v. Miller

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2008

Argued: March 30, 2009                    Decided: November 23, 2010

Docket No. 08-1152-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

-v.-

MICHELLE MILLER, also known as MICHELLE FAVREAU,
also known as MICHELLE BRODEAU,
*Defendant-Appellant*.

_____

Before: STRAUB, PARKER, and LIVINGSTON, *Circuit Judges*.[*]

Appeal from a judgment of the United States District Court for the District of Vermont

(Sessions, *J.*).  Defendant-Appellant argues principally that the district court erred in excluding as

irrelevant evidence of ongoing custody litigation in her trial for international parental kidnapping.

We conclude that the district court did not so err and therefore affirm.

Judge Straub dissents in a separate opinion.

_____

[*] The Honorable Sonia Sotomayor, originally a member of this panel, was elevated to the Supreme Court on August 8, 2009.  The Clerk has designated, by random selection, the Honorable Barrington D. Parker to replace her. *See* Second Circuit Internal Operating Procedure E(b) (formerly § 0.14(b) of the Local Rules).

MICHAEL L. DESAUTELS, Office of the Federal Public Defender, Burlington, VT, *for Defendant-Appellant*.

NANCY J. CRESWELL, Assistant United States Attorney (Gregory L. Waples, Assistant United States Attorney, *on the brief*), *for* Thomas D. Anderson, United States Attorney for the District of Vermont, Burlington, VT, *for Appellee*.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

Defendant-Appellant Michelle Favreau[1] ("Favreau") appeals from a judgment of the United States District Court for the District of Vermont (Sessions, *J.*) entered February 29, 2008, following a jury trial, convicting her of one count of international parental kidnapping in violation of 18 U.S.C. § 1204. On appeal, Favreau argues that the district court erred in excluding evidence of her appeal in child custody litigation pending before the Vermont Supreme Court and in refusing to grant a continuance of the criminal trial to await the outcome of this appeal. She also contends that the evidence was insufficient to support her conviction. Because we conclude that the district court did not abuse its discretion in excluding the evidence of Favreau's pending appeal and that Favreau's other arguments are also without merit, we affirm the judgment of conviction.[2]

**BACKGROUND**

Michelle Favreau and Keith Miller ("Miller") met in high school in Bennington, Vermont, and, several years later, entered a relationship. On March 3, 1994, Favreau gave birth to the couple's

---

[1] Favreau was known during her marriage as Michelle Miller, the name under which she was indicted. She has since reverted to her maiden name, Favreau, and, accordingly, we will refer to her as such throughout this opinion.

[2] On appeal, Favreau also initially challenged four special conditions of her term of supervised release. However, because that term of supervised release has since ended, she has withdrawn those challenges and we therefore do not consider them further.

2

only child, Robert Keith Miller ("Robbie"), and the two were subsequently married. In March 1999, however, the couple divorced and, pursuant to a divorce decree entered by the Vermont Family Court with the consent of all parties, Favreau was awarded legal custody of Robbie. Miller was awarded visitation rights.

Relations between Favreau and Miller degenerated, however, and on April 25, 2000, Favreau obtained an *ex parte* temporary abuse prevention order from the Probate and Family Court Department of the Massachusetts Trial Court in Pittsfield, Massachusetts ("Massachusetts Family Court") where she had moved with Robbie following the divorce. That order gave Favreau full custody of Robbie on a temporary basis, pending an adversarial hearing. On June 2, following a hearing attended by both parties, the court extended the order for a year, thereby barring Miller from seeing Robbie during that period. Miller moved for reconsideration, however, and, on June 15, 2000, the court modified its order to permit Miller two hours of supervised visitation per week. The court further provided that it would review the matter further after six visits had been successfully completed. The parties also agreed that jurisdiction over any further custody proceedings should be in Massachusetts and the Massachusetts Family Court issued an order to that effect; the Vermont Family Court relinquished jurisdiction accordingly.

The first visit was held according to the terms of the Massachusetts order. Shortly after the first visit, however, Favreau began moving Robbie around the state and country in an effort to stay away from Miller, whom she did not inform of her whereabouts. On May 23, 2001, without notifying Miller, Favreau took Robbie across the Vermont border into Canada. Favreau conceded, at her criminal trial, that she knew at the time she took Robbie across the border that Miller was

3

entitled to at least five additional supervised visits pursuant to the June 15, 2000 order.

Once in Canada, Favreau applied to become a permanent resident, and, after obtaining that status, on September 11, 2002, applied for custody of Robbie in the Superior Court of Quebec, seeking to cancel all of Miller's visitation rights and to obtain child support. Miller, who was served by mail with papers in the Canadian proceeding, moved to dismiss that action for lack of jurisdiction. The Canadian Superior Court denied that motion, finding that its exercise of jurisdiction was in the best interests of the child, and granted Favreau custody pending resolution of the case. Proceedings in that court thus continued, and, on February 3, 2005, the Quebec court awarded Favreau custody. Miller appealed that decision, but the Canadian appellate court affirmed it that October.

In Favreau's absence, however, Miller had begun parallel court proceedings in the United States to try to regain custody of Robbie. First, in early 2002, Miller requested that the Massachusetts family court transfer jurisdiction over custody matters back to Vermont, which it did on the ground that Favreau's whereabouts were unknown. Miller then moved in Vermont Family Court to modify custodial rights and to enforce his existing parental rights. Miller also sought to have Favreau held in contempt for violating the court orders already in place. On September 13, 2002 the Vermont court issued a written order granting full custody of Robbie to Miller pending a further evidentiary hearing and holding Favreau in contempt of court. It also issued a bench warrant for Favreau's arrest.

The U.S. Attorney's Office for the District of Vermont then began to pursue a federal criminal prosecution, and on December 2, 2002, Favreau was indicted in the United States District Court for the District of Vermont on one count of international parental kidnapping in violation of

18 U.S.C. § 1204(a). The indictment covered the period from June 2002 through the date of indictment, December 2, 2002.

In January 2006, Favreau returned to Vermont, leaving Robbie in Canada, and was arrested by federal marshals. She was then transferred to state custody based on the Vermont contempt charge, where she proceeded to move to dismiss that charge on the ground that the Vermont Family Court lacked subject matter jurisdiction over the case when it issued its September 2002 order. The state court denied this motion. Favreau then moved in the Vermont court for relief from the judgment of contempt and for recognition of the Canadian custody order, but that court denied those requests as well. Favreau then appealed to the Vermont Supreme Court.

While that appeal was pending, Favreau was transferred to federal custody so that her federal criminal case could proceed to trial. In light of the pending appeal in state court, Favreau moved to stay her federal case or, in the alternative, to be allowed to introduce evidence of the pending appeal to the jury. The district court denied both requests. With respect to the continuance, the court expressed concern that staying the criminal proceeding pending outcome of the state court appeal would be greatly detrimental to Favreau insofar as she would have to remain incarcerated for an unknown but potentially lengthy period while awaiting her federal criminal trial. With respect to the evidentiary motion, the district court concluded that the pendency of the appeal was of no relevance to the criminal trial and thus that the fact that it was pending was inadmissible.

Favreau's federal trial took place on July 11 and 12, 2007. At trial, the government relied on at least two court orders effective during the period of the indictment to establish Miller's parental rights—the June 2000 Massachusetts Family Court order providing for six supervised visits, and the

5

September 2002 Bennington Family Court order, issued in Favreau's absence, granting Miller full custody. It further adduced testimony establishing that Favreau left the country and remained out of the country with the intent to frustrate those rights. Favreau, who testified on her own behalf, attempted to establish two statutory affirmative defenses: first, that she acted "within the provisions of a valid court order granting [her] custody . . . at the time of the offense," and, second, that she was "fleeing an incident of domestic violence." 18 U.S.C. § 1204(c)(1), (2). The jury rejected those defenses and found Favreau guilty of international parental kidnapping. She was sentenced on February 28, 2008, to time served—having remained incarcerated since her return to the United States—and to one year of supervised release.

On August 22, 2008—more than a year after Favreau's trial—the Vermont Supreme Court determined that, although the Vermont Family Court had jurisdiction over Robbie's custody proceedings in September 2002 when it granted full custody to Miller and held Favreau in contempt, it should have declined to exercise that jurisdiction and deferred instead to the Canadian courts. *See Miller v. Miller*, 965 A.2d 524, 531-35 (Vt. 2008). The Vermont Supreme Court therefore reversed the portion of the family court's order denying Favreau's request for recognition of the Canadian judgment. *Id.* at 537.

## DISCUSSION

### I.

Before this Court, Favreau contends, first, that the district court erred in excluding evidence of her appeal of the Vermont Family Court's September 2002 order to the Vermont Supreme Court,

6

which was pending at the time of her trial.[3]   Because we afford district courts "wide latitude . . . in

determining whether evidence is admissible," *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*,

467 F.3d 107, 119 (2d Cir. 2006) (internal quotation marks omitted), we review its evidentiary

rulings for abuse of discretion, reversing only if we find "'manifest error,'" *Cameron v. City of New

York*, 598 F.3d 50, 61 (2d Cir. 2010) (quoting *Manley v. AmBase Corp.*, 337 F.3d 237, 247 (2d Cir.

2003)); *see also United States v. Jackson*, 335 F.3d 170, 176 (2d Cir. 2003).[4]   Indeed, our law makes

clear that even where we conclude that an evidentiary ruling was "manifestly erroneous," we will

nonetheless affirm if the error was "harmless"—that is, if we can conclude that the error did "not

affect substantial rights." Fed. R. Crim. P. 52(a); *SR Int'l Bus. Ins. Co.*, 467 F.3d at 119.

We find no such abuse of discretion—let alone "manifest error"—on these facts.  Under the

Federal Rules, evidence is relevant if it has "any tendency to make the existence of any fact that is

of consequence to the determination of the action more probable or less probable than it would be

without the evidence." Fed. R. Evid. 401.  "Evidence which is not relevant is not admissible." Fed.

R. Evid. 402.  The district court concluded, and the government urges on appeal, that the pending

---

[3] While we take judicial notice of the decisions handed down by the other courts in this case, particularly the Vermont Supreme Court's decision of August 22, 2008, *Miller v. Miller*, 965 A.2d 524 (Vt. 2008), s*ee* Fed. R. Evid. 201(b) (permitting judicial notice of facts "not subject to reasonable dispute"), we do not pass on the merits of any of these decisions.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

[4] Favreau contends that the district court's decision prevented her from asserting an affirmative defense and, as such, should be reviewed *de novo*.  The argument is without merit. While a district court's determination of whether a proffered affirmative defense is legally sufficient raises a question of law to be reviewed *de novo*, its decision as to the admissibility of any particular item of evidence with respect to such a defense is reviewed for abuse of discretion. *See United States v. Gole*, 158 F.3d 166, 168 (2d Cir. 1998).

7

appeal of the Vermont family court order of September 2, 2002, which gave Miller full custody of Robbie, was not relevant because it was not of consequence to the determination of any material fact or issue in dispute at trial. We agree.

To establish its case, the government was required to prove: (1) that Robbie had previously been in the United States; (2) that Favreau took Robbie from the United States to another country (or kept Robbie from returning to the United States from another country); and (3) that Favreau acted with the intent to obstruct the lawful exercise of Miller's parental rights. *See* 18 U.S.C. § 1204(a); 2 L. Sand et al., *Modern Federal Jury Instructions*, § 42-17. Favreau argues that evidence of her appeal of the Vermont Family Court's September 2002 order was relevant to the third element. Specifically, she contends that such evidence would have allowed her to call into question "whether Keith Miller possessed 'lawful parental rights' at the time that [Favreau] went to Canada with her son." Appellant's Br. at 20.

The argument is without merit. As a preliminary matter, at the time Favreau went to Canada, the Vermont order at issue *did not exist*. Her appeal of that order, thus, could not possibly be probative of Miller's rights "at the time that [Favreau] went to Canada with her son." Nor, however, could it be probative as to Miller's parental rights during the period of the indictment—i.e., from June to December 2002. Those rights, as noted above, stemmed from at least two different court orders—the June 2000 Massachusetts Family Court order granting Miller at least six supervised visits, and the September 2002 Vermont Family Court order granting Miller full custody. There is no contention that the pending appeal of the latter, Vermont order was of any relevance to consideration of the rights created by the Massachusetts order. Instead, Favreau argues that the

8

pending appeal was relevant to consideration of rights created by the second court order—i.e., the order she was appealing. Even with respect to this order, we disagree.

Favreau's argument ignores the basic principle that any "lawful parental rights" created by the second order came into existence when the order was *issued*. Indeed, it is a well-established "basic proposition that all orders and judgments of courts must be complied with promptly" and that while a party has a right to appeal the order, "absent a stay, he must comply promptly with the order pending appeal." *Maness v. Meyers*, 419 U.S. 449, 458 (1975); *McDonald v. Head Crim. Ct. Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988) ("An order issued by a court must be obeyed, even if it is later shown to be erroneous."). Here, no stay of the order was ever requested or issued. Accordingly, as of September 13, 2002, Favreau was required to comply with the Vermont court order which gave Miller lawful parental rights to full custody, rights Favreau frustrated by keeping Robbie outside the United States.

The fact that Favreau was appealing that order was not evidence to the contrary. Indeed, it *could not* be evidence to the contrary, because the pendency of the appeal could not itself negate the existence of Miller's parental rights while the order was still in effect, which it was during the period of the indictment. Instead, the pending appeal could, at most, express Favreau's *disagreement with* those rights. *Cf. United States v. Kraeger*, 711 F.2d 6, 7 (2d Cir. 1983) (per curiam) ("[A] good-faith misunderstanding of the law may negate willfulness but a good-faith disagreement with the law does not." (internal quotation marks omitted)). Because her disagreement with those rights—as expressed by the appeal—was neither relevant to their existence during the period of the indictment nor a legal defense to the crime charged, the district court correctly concluded that the

9

pending appeal was not relevant and was thus inadmissible.

More important, however, even were we to disagree with the district court's assessment of the relevance of that evidence, we would be unable to conclude that its ruling amounted to "manifest error." *Cameron*, 598 F.3d at 61 (internal quotation marks omitted). As a general matter, we find "manifest error" only where we are "persuaded that the trial judge ruled in an arbitrary and irrational fashion." *United States v. Dhinsa*, 243 F.3d 635, 649 (2d Cir. 2001) (quoting *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996)). We see no basis on this record for determining that the district court's evidentiary ruling—which came after it heard lengthy argument on the motion and considered the proffered evidence in the context of the trial as a whole—was reached in an "arbitrary and irrational fashion."

As discussed above, Favreau moved *in limine* prior to trial to introduce two pieces of evidence: first, evidence of her pending appeal of the Vermont family court order, and, second, evidence of the Canadian court order granting Favreau full custody of Robbie. After a hearing, the district court denied the motion with respect to the pending appeal, rejecting Favreau's theory that it was relevant as a challenge to the validity of that order. With respect to the Canadian custody order, the court permitted Favreau to introduce evidence of her application for custody in the Canadian court because of its potential relevance to Favreau's defense that she lacked the requisite criminal intent under the statute. However, it precluded any mention of the order itself, finding that such evidence would be irrelevant and confusing. *See* Fed. R. Evid. 403; *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir. 1989) (Rule 403 grants courts "broad discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of

10

confusion of the issues or if it would be needlessly cumulative.") Recognizing as we frequently

have, that the abuse-of-discretion standard for evidentiary rulings allows for a "range of permissible

decisions," *Manley*, 337 F.3d at 245 (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir.

2001)), we have little difficulty concluding that the district court's ruling here was safely within that

range.

Finally, even were we to find "manifest error," we would deem that error harmless. As

noted, even manifestly erroneous evidentiary rulings are insufficient to warrant reversal if they do

not "affect substantial rights." Fed. R. Crim. P. 52. "Whether an evidentiary error implicates a

substantial right depends on the likelihood that the error affected the outcome of the case." *Tesser*

*v. Bd. of Educ.*, 370 F.3d 314, 319 (2d Cir. 2004) (internal quotation marks omitted). Here, there

can be no serious claim that the district court's evidentiary ruling had any likelihood of affecting the

outcome of the case. The government's evidence of guilt was overwhelming. As discussed further

below, it was able to conclusively establish the elements of the crime based *solely* on the June 2000

Massachusetts Family Court order—i.e., without consideration of the Vermont order on appeal.

Accordingly, even if knowledge of the pending appeal of the Vermont Family Court order might

have led a reasonable juror to question the existence of the parental rights created by *that order*, the

government's evidence was still more than sufficient to allow a reasonable juror to find Favreau

guilty. Thus, we are confident that any "error" made by the district court did not affect the outcome

of the proceedings below.

We therefore affirm the district court's decision to exclude as irrelevant evidence of the

pending Vermont Supreme Court appeal.

11

**II.**

Favreau argues, next, that the district court should have granted a continuance until the Vermont decision was handed down. We will overturn a district court's decision to deny a continuance "only for an abuse of discretion." *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 100 (2d Cir. 2001). A defendant must thus show both arbitrariness and prejudice in order to obtain reversal of the denial of a continuance. *Id.*

For substantially the reasons set forth above, we find that Favreau has failed to establish either. Specifically, we conclude that Favreau has not establish prejudice because neither the appeal nor its ultimate outcome were relevant to the existence of Miller's rights during the period of the indictment while the Vermont order was still in effect and Favreau was accordingly bound by it. Favreau thus cannot establish that awaiting the Vermont Supreme Court decision would either have given Favreau grounds to move to dismiss the indictment or strengthened her case at trial. Nor does Favreau identify any basis for concluding that the district court's decision—which, like its evidentiary ruling, came after extensive oral argument—was in any way "arbitrary."

We therefore conclude that the district court did not abuse its discretion in denying the continuance.

**III.**

Finally, Favreau claims that there was insufficient evidence presented as to her intent. While we review such a claim *de novo*, a defendant challenging the sufficiency of the evidence to support her conviction "bears a heavy burden," *United States v. Mercado*, 573 F.3d 138, 140 (2d Cir. 2008) (internal quotations omitted), because we affirm where viewed "in the light most favorable to the

12

prosecution, any rational trier of fact could have found the essential elements," *United States v. Ionia Mgmt. S.A.*, 555 F.3d 303, 309 (2d Cir. 2009) (per curiam) (internal quotation marks omitted); *see generally Jackson v. Virginia*, 443 U.S. 307 (1979). In reviewing such a challenge, "we must credit every inference that could have been drawn in the government's favor" and "defer to the jury's determination of the weight of the evidence and the credibility of witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence." *United States v. Reifler*, 446 F.3d 65, 94 (2d Cir. 2006)(internal quotation marks and citation omitted).

Viewing the evidence in the light most favorable to the government, Favreau does not meet her burden. The government's evidence of Favreau's intent was based on, among other things, her knowledge of Miller's parental rights as recognized in the initial divorce decree of March 1999 and the June 15, 2000 Massachusetts Family Court order. As noted, Favreau's testimony indicated that, when she crossed into Canada with Robbie in May 2001, she knew about the June 15 Massachusetts Family Court order granting visitation rights to Miller. Moreover, she testified that, at the Canadian border, Favreau presented the June 2 abuse prevention order, even though she knew it had been superseded by the June 15 order. Accordingly, there was sufficient evidence for a jury to find that, during the indictment period, Favreau remained in Canada with Robbie despite knowledge of Miller's parental rights. On that record, a rational jury could have inferred Favreau's intent to obstruct Miller's parental rights.

## CONCLUSION

For all of the foregoing reasons, the judgment of the district court is **AFFIRMED**.

13

STRAUB, *Circuit Judge*, dissenting:

The majority today finds that the District Court properly excluded evidence of Michelle Favreau's pending appeal to the Vermont Supreme Court as irrelevant to Favreau's defense to charges of international parental kidnapping. Because I believe the excluded evidence tends to show that Favreau lacked the specific intent required by the international parental kidnapping statute, I would find that the evidence was relevant and that the District Court erred in excluding it. Therefore, I respectfully dissent.

Under the "very low standard" set by the Federal Rules of Evidence, *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008), evidence is relevant and therefore admissible if it has "any tendency" to make "any fact" in issue more or less probable than it would be without the evidence, Fed. R. Evid. 401; *see* Fed. R. Evid. 402 ("All relevant evidence is admissible . . . ."). The length of the chain of inferences required to show the probative value of any evidence is not determinative of whether the evidence is relevant. *See United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) ("[S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry."); *United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir.) (Friendly, J.) ("The length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved . . . does not render the evidence irrelevant."), *cert. denied*, 400 U.S. 834 (1970). Likewise, the mere fact that proffered evidence came into existence after the events that the evidence is proffered to prove does not render the evidence irrelevant. *See United States v. Kelley*, 551 F.3d 171, 175-76 (2d Cir.) (per curiam) (finding that fraudulent account statements sent by defendant two to four years after alleged securities violations were relevant to defendant's

-1-

intent at the time of the alleged violations), *cert. denied*, 129 S. Ct. 2756 (2009); *see also United States v. Mangual-Santiago*, 562 F.3d 411, 428-29 (1st Cir.) (finding that evidence of bank account activity after a conspiracy had ended was relevant to defendant's intent to conceal funds), *cert. denied*, 130 S. Ct. 293 (2009); *United States v. Alahmad*, 211 F.3d 538, 542 (10th Cir. 2000) (finding, in international parental kidnapping case, that evidence of a court order issued after the charged period was relevant because the later order found that defendant had violated a prior court order), *cert. denied*, 531 U.S. 1080 (2001).[1]

An essential element of the international parental kidnapping charge against Favreau is that Favreau removed Robbie from the United States, or retained him outside of the United States, "with intent to obstruct the lawful exercise of [Keith Miller's] parental rights." 18 U.S.C. § 1204(a). The majority correctly notes that evidence of the pending Vermont appeal, which did not exist during the indictment period, could not have been used to argue that Miller did not have valid parental rights during the indictment period. Maj. Op. at **[8-10]**. But the majority ignores another relevant use of the evidence. Evidence of the pending Vermont appeal was relevant to Favreau's defense because it tends to show that Favreau took Robbie to Canada with intent of vindicating her own parental rights, rather than with intent of obstructing Miller's rights.

That there are several steps to demonstrating the relevance of the Vermont appeal does not mean that the evidence is irrelevant under Rule 401. *See Quattrone*, 441 F.3d at 188; *Ravich*, 421 F.2d at 1204 n.10. The appeal at issue was from a Vermont lower court order denying Favreau's

---

[1] It should be noted that the District Court's exclusion of the evidence in this case was based solely on its determination that the evidence was irrelevant under Rule 401. The District Court did not go on to consider whether the evidence, even if relevant, would be excludable under Rule 403, and thus that issue is not before us.

motion for recognition of a Canadian order that granted Favreau custody of Robbie. The existence of Favreau's appeal of the Vermont lower court order suggests that Favreau attempted to use the Canadian proceedings to vindicate her own parental rights in Vermont. The fact that Favreau attempted to vindicate her own rights in the Vermont courts, together with the admitted evidence of the Canadian court proceedings, makes it more likely that she originally brought Robbie to Canada and retained him there with the intent of obtaining custody of Robbie in Canada and of then using the Canadian proceedings to vindicate her own parental rights in the United States. In turn, the fact that Favreau originally took Robbie to Canada and retained him there with the intent of vindicating her own rights both in Canada and in the United States makes it less likely that she took this step with the intent of obstructing Miller's parental rights. Therefore, the Vermont appeal has some tendency to make a fact in issue less probable and, as a result, is relevant evidence under Rule 401.

Though they are related, Favreau's intent to vindicate her own rights and her possible intent to obstruct Miller's rights are not one and the same. For example, imagine that Favreau took Robbie to Canada with the intent of obtaining full custody of Robbie, but also knew that Miller lived in Canada, or visited daily, and would easily be able to exercise his own parental rights. In that case, it would be clear that evidence of Favreau's alternative motive would be relevant additional evidence to show that Favreau did not travel to Canada with the specific intent of obstructing Miller's existing parental rights. In this case, of course, the facts are different and evidence of Favreau's alternative motive may be less influential. The weight to give evidence, however, is a question for the jury and has no bearing on the threshold relevance determination under Rule 401. *See Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir. 1992)

-3-

("Any question as to the weight to be accorded a relevant document is a matter for the jury."); *see also United States v. Josephberg*, 562 F.3d 478, 487-88 (2d Cir.), *cert. denied*, 130 S. Ct. 397 (2009).

Furthermore, the facts of this case do not preclude Favreau from arguing that she did not have the intent required by the statute. Contrary to the majority's suggestion, Maj. Op. at **[11]**, the mere facts that (1) Miller had existing parental rights, (2) Favreau knew of those rights, and (3) Favreau took Robbie to Canada do not conclusively prove that Favreau took Robbie to Canada with the specific intent of obstructing Miller's parental rights. While, as the majority suggests, Maj. Op. at **[13]**, a jury could infer from those facts that Favreau intended to obstruct Miller's rights, the inference a jury might reasonably draw from Favreau's knowledge has no bearing in determining the relevance of the excluded evidence. The question is simply whether admitting evidence of the Vermont appeal "affects the mix of material information" available to the jury on the question of Favreau's intent. *Quattrone*, 441 F.3d at 188. Again, what relative weight to give to the excluded evidence is the jury's role, not ours. *See Sir Speedy*, 957 F.2d at 1038; *see also Josephberg*, 562 F.3d at 487-88.

Likewise, the fact that evidence of the pending Vermont appeal came into existence after the indictment period does not mean that it is irrelevant.[2] *Cf. Mangual-Santiago*, 562 F.3d at 428-29; *Kelley*, 551 F.3d at 175-76; *Alahmad*, 211 F.3d at 542. The relevance of subsequent evidence of an alternative motive is clearly demonstrated if we imagine that Robbie had a rare

---

[2] The majority may not disagree with this assertion. The majority only points out that the Vermont appeal "*did not exist*" at the time Favreau went to Canada in the context of its argument that the appeal was not relevant to the existence of Miller's parental rights during the indictment period. Maj. Op. at **[8-9]**.

medical condition that could only be treated in Canada.  Imagine that, knowing of Miller's

parental rights and knowing that they would be obstructed, Favreau nevertheless took Robbie to

Canada intending that Robbie receive the medical treatment he needed.  Assume further that a

medical report was issued years after Favreau brought Robbie to Canada that confirmed that

Robbie did in fact have the rare medical condition.  The report would certainly be probative of

Favreau's intent in transporting Robbie to Canada, even though the report, like the pending

Vermont appeal, came into existence after the charged period.  Such a report would make it more

likely that Favreau transported Robbie to Canada with the intent of obtaining medical treatment

and not with the alternative intent of obstructing Miller's parental rights.  Of course, continuing

the analogy, admitting the medical report into evidence would not entitle Favreau to an acquittal.

But the report would at least be relevant evidence of her actual motivation in traveling to Canada.

So, too, is evidence of the pending Vermont appeal in this case.

For all of the reasons explained above, I would find that the pending Vermont appeal was

relevant.  Furthermore, because the District Court ruled that this evidence, which was relevant to

an essential element of the crime of international parental kidnapping, was irrelevant, I would find

that the District Court committed "manifest error" and exceeded its allowable discretion.[3]  The

majority notes that the abuse-of-discretion standard for evidentiary rulings allows for a "range of

permissible decisions," *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003) (quoting

*Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)), by the District Court.  However,

---

[3]While there is some support for the proposition that "[r]elevance is a question of law," *United States v. Torniero*, 735 F.2d 725, 730 (2d Cir. 1984), *cert. denied*, 469 U.S. 1110 (1985), to be reviewed de novo instead of under an abuse-of-discretion standard, I need not decide that question because I find error in the District Court's decision even under the more lenient abuse-of-discretion standard.

as discussed above, evidence of the Vermont appeal tended to make a fact in issue—namely, Favreau's criminal intent—less likely. The evidence was therefore admissible on the face of Rules 401 and 402. A finding that relevant evidence is inadmissible as irrelevant is not a permissible decision under the Federal Rules of Evidence. Furthermore, the evidence was relevant not just to any issue, but rather to the central issue in the case—Favreau's intent. *See Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 459 (2d Cir. 1975) ("Since we have found that the exclusion of [the evidence] was critical because of its relevance to the central issue of the case, its exclusion is manifest error."). For all of these reasons, the District Court's exclusion of the evidence was manifest error.

Likewise, with regard to whether the District Court's error was harmless, an error committed at trial is less likely to be harmless if it speaks directly to a critical element of the prosecution's case. *See Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir. 2000) (noting that a prominent factor in harmless error analysis is whether the trial error "bore 'on an issue that [was] plainly critical to the jury's decision'" (quoting *Hynes v. Coughlin*, 79 F.3d 285, 291 (2d Cir. 1996))). In this case, the improperly excluded evidence went to the most critical element of the crime charged—Favreau's intent—and, therefore, I would find that the District Court's error was not harmless.

The majority's reasoning in finding that any potential error was harmless is not persuasive. The majority finds that the government "was able to conclusively establish the elements of the crime based *solely* on the June 2000 Massachusetts Family Court order," Maj. Op. at **[11]**, and therefore concludes that any error in excluding the Vermont appeal was harmless. Of course, neither the Massachusetts order nor the Vermont order conclusively establishes the elements of

the crime of international parental kidnapping. As explained above, the fact that Favreau brought Robbie to Canada while she knew of the court orders does not conclusively show that Favreau had the requisite criminal intent in bringing Robbie to Canada. As a result, Favreau should be permitted to introduce evidence tending to show that she did not intend to obstruct Miller's parental rights—namely, evidence of the Vermont appeal. While it is possible that the jury could infer Favreau's specific intent based only on her mere knowledge of the orders, and that it could do so even if evidence of the Vermont appeal were admitted, I decline to speculate that evidence of the Vermont appeal would have no impact on the jury's decision in this case.

In sum, I find that the District Court exceeded its allowable discretion by excluding evidence of the Vermont appeal, and, as a result, I would vacate Favreau's conviction and remand the case for further proceedings as appropriate, including a new trial. Because I would vacate the conviction on those grounds, I need not reach Favreau's other arguments on appeal.