19-931-cr
*United States v. Stanley*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of April, two thousand twenty.

PRESENT:     JOSÉ A. CABRANES,
             ROBERT D. SACK,
                     *Circuit Judges*,
             KATHERINE POLK FAILLA,
                     *District Judge.*[*]

---

UNITED STATES OF AMERICA,

        *Appellee,*                                19-931-cr

        v.

ARTHUR STANLEY, AKA WIGGS,

        *Defendant-Appellant.*

---

FOR APPELLEE:                          Peter S. Jongbloed, (Marc H. Silverman *on the brief*), Assistant United States Attorneys, *for* John H. Durham, United States Attorney for the District of Connecticut, New Haven, CT.

---

[*] Judge Katherine Polk Failla, of the United States District Court for the Southern District of New York, sitting by designation.

**FOR DEFENDANT-APPELLANT:**  Arza Feldman, Feldman and Feldman, Attorneys at Law, Uniondale, NY.

Appeal from an April 4, 2019 amended judgment of the United States District Court for the District of Connecticut (Jeffrey A. Meyer, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Defendant-Appellant Arthur Stanley ("Stanley") challenges his conviction, after a jury trial, for murdering Keith Washington in violation of 18 U.S.C. § 1959(a)(1), the Violent Crimes in Aid of Racketeering ("VCAR") statute. Stanley argues, first, that the District Court erroneously admitted certain evidence; second, that the evidence, taken as a whole, was insufficient to prove four of the five elements of the charged crime; and third, that three eye-witnesses delivered testimony so inconsistent that it amounted to perjury.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

I.      *Admission of Evidence*

Stanley argues that the District Court wrongly admitted evidence relating to a 2008 seizure of a cache of firearms and ammunition in the territory of the Westhell gang. The District Court denied Stanley's motion to limit the use of this evidence at trial and permitted its admission to illustrate "the nature . . . of the enterprise at issue here." Gov. App. 6.

We review the District Court's evidentiary determination for abuse of discretion. *United States v. Miller*, 626 F.3d 682, 687-88 (2d Cir. 2010). "We will . . . only hold that the district court abused its discretion in making an evidentiary ruling where the ruling was arbitrary and irrational." *Restivo v. Hessemann*, 846 F.3d 547, 573 (2d Cir. 2017) (internal quotation marks omitted). Moreover, even if we find that the District Court abused its discretion, we will not reverse it if the error made was harmless. *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009).

We conclude that the District Court did not abuse its discretion in admitting evidence relating to the 2008 seizure. The evidence was clearly relevant to an element of the crime, as is required for admissibility under Federal Rule of Evidence 401, and the evidence was not likely to have caused the type of "unfair prejudice" to Stanley that Federal Rule of Evidence 403 prohibits. Specifically, the evidence was relevant because it provided information about the existence and nature of the racketeering enterprise—in this case, the Westhell gang—which is a necessary element of proving any VCAR murder. *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992) (noting

2

that the Government must prove beyond a reasonable doubt the existence of a racketeering enterprise). The jury could infer from the information that the Westhell gang engaged in activity requiring the use of such weapons, since the weapons were stored near a building with graffiti indicating the gang's presence.

Importantly, the District Court applied the correct law when it undertook a "conscientious assessment of whether"—in admitting such evidence—"unfair prejudice substantially outweigh[ed] [its] probative value." *United States v. Scott*, 677 F.3d 72, 84 (2d Cir. 2012) (internal quotation marks omitted). It then reasonably concluded that the likelihood of prejudice did *not* outweigh the probative value of the evidence, given the fact that the evidence was directly related to a particular element of the crime.

Accordingly, because the District Court admitted the evidence without acting arbitrarily or irrationally, the District Court did not abuse its discretion.

## II. *Sufficiency of the Evidence*

Stanley contends that the Government failed to produce evidence sufficient to prove the following four elements of VCAR murder: (1) that the Westhell gang was a continuously operating racketeering enterprise; (2) that the Westhell gang engaged in racketeering conduct; (2) that Stanley had a position in the Westhell gang; and (4) that a purpose for Stanley's murder of Washington was to increase his position in the Westhell gang.[1]

"We review challenges to the sufficiency of evidence *de novo*." *United States v. Pierce*, 785 F.3d 832, 837 (2d Cir. 2015). "In considering the sufficiency of the evidence supporting a guilty verdict, the evidence must be viewed in the light most favorable to the Government. To avoid usurping the role of the jury, the Court must resolve all issues of credibility in favor of the jury's verdict. The Court must also credit every inference that the jury might have drawn in favor of the government." *United States v. Cuti*, 720 F.3d 453, 461-62 (2d Cir. 2013) (internal citations, alterations, and quotation marks omitted). We will not upset a verdict if "*any* rational trier of fact could have found the

---

[1] Five elements must be proved in a VCAR case: "(1) that the Organization was a [Racketeer Influenced and Corrupt Organizations Act ("RICO")] enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise." *Concepcion*, 983 F.2d at 381. Stanley challenges the sufficiency of the evidence for all elements except the fourth: he does not challenge the sufficiency of the evidence that he committed the alleged crime of violence, in this case murder.

3

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

1. Evidence that the Westhall gang was a racketeering enterprise

First, Stanley argues that the Government failed to produce enough evidence to establish that the Westhell gang was a racketeering enterprise. He suggests, among other things, that the Government failed to show that the gang had the necessary traits of a coordinated organization or that it operated as a continuous unit engaged in some racketeering activity.

We disagree. VCAR defines an enterprise as any "partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1959(b)(2). In analogous prosecutions under RICO, 18 U.S.C. §§ 1961-1968, we have said that "[t]he existence of a RICO enterprise may be proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Payne*, 591 F.3d 46, 60 (2d Cir. 2010) (internal quotation marks omitted). Since we have held that "a § 1959 [VCAR] enterprise is plainly a RICO enterprise" we apply the same standard here. *Concepcion*, 983 F.2d at 380 (internal quotation marks omitted).

Using that standard, and drawing all inferences in favor of the Government, we conclude that there was sufficient evidence to prove that the Westhell gang was a racketeering enterprise. Such evidence included various testimony about the Westhell gang's existence; testimony that the alleged gang members shared an automobile and made a public display of support during a prior legal proceeding involving one alleged member; and the aforementioned evidence about the 2008 seizure of weapons from Westhell gang territory. It also included testimony from Brandyn Farmer ("Farmer"), who recounted Stanley's own admission that he was involved in the Westhell gang. Although Stanley contends that, under *Opper v. United States*, 348 U.S. 84 (1954), such an admission should not have been let in because of a lack of corroboration, we find that corroboration—in the form of other trial evidence—was sufficiently present to indicate that the testimony was trustworthy. See *United States v. Irving*, 452 F.3d 110, 119 (2d Cir. 2006) ("To determine that an admission has been adequately corroborated, we must find in the record 'substantial independent evidence which would tend to establish the trustworthiness of the statement.'" (quoting *Opper*, 348 U.S. at 93)). Taken together, all of this evidence was enough for a rational juror to conclude, beyond a reasonable doubt, that the Westhell gang was a racketeering enterprise.

2. Evidence that the Westhell gang engaged in racketeering activity

Second, Stanley argues that the Government failed to produce enough evidence to establish that the Westhell gang engaged in racketeering activity. He contends, among other things, that the

4

Government did not demonstrate that Westhell—or Stanley on behalf of Westhell—distributed or conspired to distribute controlled substances, the racketeering activity alleged in the indictment.

We disagree. VCAR defines "racketeering activity" by reference to the RICO definition. 18 U.S.C. § 1959(b)(1). This includes "offenses involving the illegal distribution of controlled substances in violation of 21 U.S.C. §§ 841(a) and 846." Stanley App. 25.

Construed in the light most favorable to the Government, we conclude that there was sufficient evidence to find that the Westhell gang engaged in such activity. That evidence included, among other things, testimony from police officers familiar with drug activity in the area occupied by the Westhell gang, and evidence that the Westhell gang was engaged in a violent conflict with other gangs, of the sort frequently engaged in by drug-dealing enterprises. Although Stanley argues that the Government needed to prove that *he* engaged in such activity, this is not the law. The Government only needed to prove that the Westhell gang did so. Based on the evidence adduced, a rational juror could have so concluded.

3. Evidence of Stanley's position within the Westhell gang

Third, Stanley argues that the Government failed to produce enough evidence to establish that he held a position within the Westhell gang. He contends, among other things, that the testimony offered, by police officers and others, merely showed his association with members of the Westhell gang, not his membership in the gang.

We disagree. We have previously "recognize[d] that evidence of a person's membership in or association with a criminal enterprise may be circumstantial because Section 1959(b)(2) defines enterprise in part as a 'group of individuals associated in fact.'" *United States v. Ferguson*, 246 F.3d 129, 135 (2d Cir. 2001) (quoting 18 U.S.C. § 1959(b)(2)).

Here, when considered in the light most favorable to the Government, there was sufficient evidence for Stanley's membership. This included testimony that he shared a car with other alleged gang members and made a public display of support during one's prior legal proceeding, in addition to the aforementioned admission to Farmer, which we have already found was properly corroborated, of his role within the Westhell gang. A rational juror could have concluded, beyond a reasonable doubt, that this evidence confirmed Stanley's position within the racketeering enterprise.

4. Evidence of Stanley's purpose for committing the murder

Fourth, Stanley argues that the Government failed to produce sufficient evidence to establish that he murdered Washington in order to maintain or increase his position in the Westhell gang. Stanley contends, among other things, that the Government could prove, at most, that his purpose for committing the murder was to exact personal revenge on Tyquan Lucien ("Lucien"), his intended target, after Lucien had allegedly shot at Stanley earlier that evening ("the Vine Street

5

shooting"). He claims that because the Government could prove, at most, that he acted only due to such a personal motivation, he cannot properly be charged with acting in order to advance the aims of the Westhell gang.

We disagree. "This Court has rejected the notion that the 'for the purpose of' element must be the defendant's sole or principal motive. We consider the motive requirement satisfied if the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *United States v. Burden*, 600 F.3d 204, 220 (2d Cir. 2010) (second set of internal quotation marks omitted).

The jury could properly have inferred as much here. When considered in the light most favorable to the Government, several pieces of evidence, taken together, were sufficient to prove that Stanley acted, in part, because of his membership in the Westhell gang. This included both the corroborated admission by Stanley to Farmer that Stanely was a "shooter" for the Westhell gang and the cell phone data indicating Stanley's contact with another alleged gang member, first around the time of the Vine Street shooting and then around the time that he shot Washington. Even if he was motivated, in part, by a personal conflict with Lucien, a rational juror could conclude that this other evidence demonstrated a secondary motivation. They could have concluded from the evidence that Stanley worked on behalf of the Westhell gang and that his actions were consistent with an interest in maintaining or improving his position within it.

*III: Witness Credibility*

While challenging the sufficiency of the evidence, Stanley also argues that the three eye-witnesses presented by the Government—Lucien, Willie Brown, and Al-Malik Sherrod—provided such inconsistent testimony that it constituted perjury. He notes that the District Court itself referred to "night and day differences" between the accounts of the witnesses, Stanley App. 215, even though it ultimately decided, when disposing of a Rule 33 motion, that the three eye-witnesses were not so unreliable in their testimony as to warrant a new trial. Stanley App. 267-69. Stanley contends that the District Court was wrong to make this ruling, and highlights the fact that the eye-witnesses' stories conflicted on several key datapoints, among them: whether Stanley was alone or accompanied by another person in the car on the way to the shooting of Washington; where the car was located; whether the car was moving; and whether Stanley exited the car to discharge his weapon or did so from within it.

"This Court reviews a district court's denial of a Rule 33 motion only for abuse of discretion." *United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007). "Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, it is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment. An example of exceptional circumstances is where testimony

6

is patently incredible or defies physical reality." *United States v. McCourty*, 562 F.3d 458, 475-76 (2d Cir. 2009) (internal citations, alterations, and quotation marks omitted).

Here, the District Court did not abuse its discretion in concluding that no such exceptional circumstances existed. The District Court, in its findings, appropriately deferred to the jury's conclusions about witness credibility while reasonably determining that the eye-witnesses' testimony did not "def[y] physical reality or otherwise cross[ ] the line from questionable to inherently unbelievable." Stanley App. 267.

## CONCLUSION

We have reviewed all of the arguments raised by Stanley on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the April 4, 2019 amended judgment of the District Court.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk