*United States v. Thomas*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of March, two thousand twenty-six.

Present:
> MICHAEL H. PARK,
> WILLIAM J. NARDINI,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

*Appellee*,

v.

CHRISTOPHER THOMAS,

*Defendant-Appellant.*

23-7856

---

FOR DEFENDANT-APPELLANT:          MURRAY E. SINGER, Port Washington, NY.

FOR APPELLEE:          KATHERINE KOPITA, Assistant United States Attorney of Counsel, *for* John A. Sarcone III, Acting United States Attorney for the Northern District of New York, Plattsburgh, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's October 30, 2023 judgment is **AFFIRMED**.

Defendant-Appellant Christopher Thomas appeals from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*) convicting him, following a jury trial, of sixteen counts relating to sex trafficking. On appeal, Thomas asks us to reverse his conviction and to remand the matter for a new trial based on three asserted errors: first, the district court's denial of his motion to suppress; second, the government's failure to disclose evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), and the district court's related denials of his motions for a continuance; and third, the district court's denial of his mid-trial request to proceed pro se. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## I.     Denial of Motion To Suppress

Two FBI Task Force Officers questioned Thomas during a three-hour car ride transporting him between jails. Thomas waived his *Miranda* rights at the beginning of the conversation and made various admissions of guilt, which the government used at trial. Partway through the conversation, Thomas, said, "I'm saying going to the feds and all that, they wanna see you didn't say shit, 'I want a lawyer.'" App'x at 130. Thomas moved to suppress the statements he made in the car after saying, "I want a lawyer." *Id.* at 130-32. But the district court denied that motion because the "context and tone" of Thomas's statements "ma[de] clear that he never invoked his right to counsel." *Id.* at 132. It concluded that Thomas had explained "that inmates in federal prison want to know that other inmates have not talked to the police or have, in other words,

2

invoked their right to counsel. When Defendant stated, 'I'm saying going to the feds and all that, they wanna see you didn't say shit, "I want a lawyer,"' Defendant was paraphrasing what he believed other inmates would want to hear, not invoking his right to counsel." *Id.*

"When reviewing the grant or denial of a motion to suppress, we apply a *de novo* standard of review of the district court's conclusions of law and a deferential, clear-error standard of review of the district court's findings of fact." *United States v. Smith*, 967 F.3d 198, 204 (2d Cir. 2020). It is well-established that "once a suspect requests counsel, all interrogation must stop until an attorney is provided or the suspect reinitiates conversation." *Wood v. Ercole*, 644 F.3d 83, 90 (2d Cir. 2011). But if "an accused makes a statement concerning the right to counsel that is ambiguous or equivocal . . . the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *United States v. Oehne*, 698 F.3d 119, 123 (2d Cir. 2012) (quotation marks and citation omitted).

Thomas argues that his statement "I want a lawyer" "constituted an unambiguous and unequivocal invocation of his Fifth and Sixth Amendment right to counsel." Appellant's Br. at 37. But he does not explain why the district court erred when it concluded that Thomas was "paraphrasing what he believed other inmates would want to hear" when he said, "I want a lawyer," rather than invoking his right to counsel. App'x at 132. That factual determination by the district court was not clearly erroneous, so we affirm the denial of Thomas's motion to suppress.

## II.   *Brady* **Violation and Denials of Motions for a Continuance**

Before trial, the government disclosed hundreds of recordings of phone calls Thomas had made while incarcerated, which it planned to use as evidence against him. But Thomas argued that the government had not produced calls he made that had exculpatory evidence. The government ultimately asked the jails Thomas had been incarcerated in to collect all of the call

3

recordings they had and produced them to Thomas. Thomas also subpoenaed Securus Technologies, which provided call services to jails, and obtained a log showing all of the calls he had made while incarcerated. Thomas maintains that "over 100 recorded phone calls" were never turned over to him. Appellant's Br. at 29.

On appeal, Thomas makes two arguments relating to the missing phone calls. First, he argues that the government violated its duty under *Brady v. Maryland*, 373 U.S. 83 (1963), when it did not turn over the missing calls. Second, he argues that the district court erred when it denied his motions for a continuance to secure the missing evidence.

"The basic rule of *Brady* is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is material either to guilt or to punishment." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (quotation marks omitted). But there is no *Brady* obligation for materials the prosecutor does not actually or constructively possess. *Morgan v. Salamack*, 735 F.2d 354, 358 (2d Cir. 1984) ("Clearly the government cannot be required to produce that which it does not control and it never possessed or inspected." (citation omitted)). Here, there is no evidence that the government controlled, possessed, or inspected the phone calls that Thomas claims it failed to disclose. To the contrary, the government repeatedly stated that it turned over all the phone calls it or the jails could access. So the government did not violate its duty to disclose under *Brady*. *See United States v. Londonio*, No. 20-2479-cr, 2024 WL 3770712, at *7 n.7 (2d Cir. Aug. 13, 2024) (summary order), *cert. denied*, 145 S. Ct. 2685 (2025) ("The district court correctly concluded there was no *Brady* violation with respect to . . . the recorded prison calls which were not in the government's possession at the time of trial.").

Thomas's challenge to the denials of his motions for a continuance also fails. "We will overturn a district court's decision to deny a continuance only for an abuse of discretion." *United*

4

*States v. Miller*, 626 F.3d 682, 690 (2d Cir. 2010) (quotation marks and citation omitted). A defendant must show "both arbitrariness and prejudice in order to obtain reversal of the denial of a continuance." *Id.* Thomas established neither. The district court considered Thomas's three motions for an adjournment or a continuance and denied them because they were unlikely to have relevant and admissible information, so its decision was not arbitrary. Thomas has also failed to establish prejudice in light of the "truly overwhelming" evidence against him at trial, which included Thomas's admissions of guilt during the car ride, a written statement, data extracted from Thomas's cellphone, information contained within Thomas's iCloud, recordings of Thomas's jail calls, and testimony from witnesses and victims. App'x at 1200.

## III. Denial of Mid-Trial Request To Proceed Pro Se

Thomas began trial representing himself, but after opening statements he asked for his standby counsel to represent him. The district court granted that request but explained to Thomas that he could not switch back to representing himself any time he disagreed with counsel. Then, before the start of the third day of trial, Thomas asked to proceed pro se. The district court asked Thomas why he wanted to proceed pro se, and Thomas explained that he wanted to ask more questions to some of the government's witnesses on cross-examination that his attorney had not asked. After hearing from Thomas, the district court denied his motion. It explained that Thomas's counsel had ably cross-examined the government's witnesses, noted that it had warned Thomas that he "would not be permitted to return to self-representation if [he] disagreed with decisions made by counsel," and concluded that Thomas had "failed to present a valid reason why [he was] seeking the discharge of [his] attorney." App'x at 640.

We review a district court's denial of a defendant's request to proceed pro se in the middle of trial for abuse of discretion. *See United States v. Stevens*, 83 F.3d 60, 67 (2d Cir. 1996). A

5

district court considering such a request "must weigh the prejudice to the legitimate interests of the defendant against the potential disruption of proceedings already in progress." *Id.* (quotation marks omitted). The court should consider "the defendant's reasons for the self-representation request, the quality of counsel representing the party, and the party's prior proclivity to substitute counsel." *United States v. Matsushita*, 794 F.2d 46, 51 (2d Cir. 1986). The district court asked about or expressly considered precisely these factors: it asked about the avenues of cross-examination that Thomas intended to pursue if he proceeded pro se and explained that its decision was based on the preparedness and effectiveness of Thomas's counsel and Thomas's "proclivity" to substitute counsel, having already done so once during the trial. It thus did not abuse its discretion in denying Thomas's request.[1]

*    *    *

---

[1] The district court's comments in its denials of Thomas's motions for a continuance and his mid-trial request to proceed pro se that Thomas had fired or been dissatisfied with his four attorneys do not substantiate Thomas's argument that those decisions were an abuse of discretion. Those comments were close to true—Thomas had four separate attorneys and had been dissatisfied with two of them—and were not the basis of either decision.

We have considered Thomas's remaining arguments and find them to be without merit.

For the foregoing reasons, the district court's October 30, 2023 judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court